THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v ROBERT T. GROH, Defendant

In the Matter of ROBERT T. GROH, Petitioner, v HOWARD A. JONES, as Justice of the Extraordinary Special and Trial Term of the Supreme Court of the State of New York, County of Queens, et al., Respondents.

Second Department, May 31, 1977

390

*Segal & Hundley* for defendant-petitioner.

*John F. Keenan, Deputy Attorney-General (George F. Brad-lau* of counsel), respondent *pro se* and for plaintiff.

*Per Curiam.* This is a motion pursuant to subdivision 2 of section 149 of the Judiciary Law by Robert T. Groh, a defendant in a pending criminal action, for an order dismissing the indictment filed against him by the Extraordinary Special Grand Jury for the County of Queens, or, in the alternative, for judgment pursuant to CPLR article 78 prohibiting the Trial Justice assigned to the Extraordinary Special and Trial Term, and the Special Prosecutor, from proceeding with respect to the said indictment.

Motion denied and proceeding dismissed, without costs or disbursements.

Consideration by this court of the prayer for relief pursuant to subdivision 2 of section 149 of the Judiciary Law is barred by the fact that an identical motion had been made before the Extraordinary Special and Trial Term and was denied by it on March 4, 1977; that determination was adhered to upon reconsideration on March 15, 1977. The availability of relief by motion to this court pursuant to subdivision 2 of section 149 is an alternative to proceeding before the Extraordinary Special and Trial Term and, having elected to proceed before

Acting Supreme Court Justice JONES in the first instance, defendant is now precluded from attempting to overturn his decision by a *de novo* application to this court (see *Matter of Dondi v Jones,* 40 NY2d 8, 15).

So far as the application for relief in the nature of prohibition is concerned, we must take cognizance of the holding of the Court of Appeals in *Matter of State of New York v King* (36 NY2d 59, 62): "The extraordinary remedy either of prohibition or mandamus lies only where there is a clear legal right, and in the case of prohibition only when a court (if a court is involved) acts or threatens to act without jurisdiction in a matter of over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction (see, e.g., *Proskin v. County Ct. of Albany County,* 30 N Y 2d 15, 18; *Matter of Lee v. County Ct. of Erie County,* 27 N Y 2d 432, 436-437; *Matter of Hogan v. Culkin,* 18 N Y 2d 330, 335-336)." (Accord *Matter of Nigrone v Murtagh,* 36 NY2d 421, 423-424.)

While the question is not entirely free of doubt, we have concluded that the allegations proffered by the defendant Groh fail to raise a jurisdictional issue (see *Matter of Paciona v Marshall,* 35 NY2d 289; *Matter of Wroblewski v Ricotta,* 35 NY2d 745; cf. *Matter of Dondi v Jones, supra; La Rocca v Lane,* 37 NY2d 575).

We should indicate, however, that had the motion under subdivision 2 of section 149 of the Judiciary Law been submitted to us *ab initio,* we would have granted the application and ordered that the indictment be dismissed, as the papers submitted by both sides reveal the presence of procedural irregularities going to the very heart and integrity of the Grand Jury system. Here, after a full presentation of the evidence, a charge on the law by the Special Prosecutor, and an apparently spirited discussion among the grand jurors themselves, they voted to dismiss the proposed charges in their entirety, and recorded that determination in their minute book. Thereafter, and this appears without contradiction on the record, the Special Prosecutor, having learned of the result, re-entered the Grand Jury room, where he gratuitously discussed with the grand jurors their failure to indict. Without any request from the Grand Jury, he then suggested to it that the Justice presiding at the Extraordinary Special and Trial Term would be willing to come before it and provide it with a further charge on the law, if it so desired. The utility of such

a gesture was questioned by a grand juror, who told the Special Prosecutor that a vote had already been taken and the matter disposed of, but the latter insisted that a further charge might enable the Grand Jury to "adequately reach a judgment on the matter, adequately and finally reach a judgment on the matter", this notwithstanding the fact that the Grand Jury had done just that—reached, voted on and recorded its determination. The Special Prosecutor then retired from the Grand Jury room and a vote was taken. Only three of the grand jurors voted to receive further instructions. Despite the fact that there was no request by the Grand Jury as a body to receive any further instructions, both the Special Prosecutor and the Justice presiding at the Extraordinary Special and Trial Term appeared before the Grand Jury on a subsequent date and delivered a further charge. The grand jurors then retired to deliberate and voted the instant indictment by the narrowest permissible margin (see CPL 190.25, subd 1).

Aside from the fact that we view these "further instructions" to have been incorrect on the law, as they seemed to indicate to the grand jurors that they had no alternative except to indict, we believe that the methods employed, although no doubt well motivated, were coercive in fact and, if permitted to go unchecked, would tend to destroy both the value and purpose of our Grand Jury system. That system, which has its origins in antiquity and enjoys no lesser protection than that afforded by the Federal and State Constitutions (US Const, 5th Amdt; NY Const, art I, § 6), performs a vital function in our jurisprudence—that of protecting the private citizen from unjust prosecution. As Mr. Justice FOSTER stated in *Matter of Gardiner* (31 Misc 364, 366-367, 375, cited with approval in *People v Minet,* 296 NY 315, 322):

"The grand jury had its origin at a time when there raged a fierce conflict between the rights of the subject and the power of the crown. It was established to secure to the subject a right of appeal to his peers, under the immunity of secrecy and irresponsibility, before the government could bring him to trial. It was a right wrung from the government to secure the subject against oppression. * * *

"[As] was rightly said by Judge King, in the case of Lloyd and Carpenter, 5 Penn. L.J. 62: 'Grand juries are high public functionaries, * * * They are the great security to the citizen against vindictive persecutions, either by government, or by

political partisans, or by private enemies. In their independent action, the persecuted have found the most fearless protectors; and in the records of their doings are to be discovered the noblest stands against the oppression of power, the virulence of malice, and the intemperance of prejudice.' * * *

*"It is as important to a person that he be fairly and justly accused of crime as that he be fairly and impartially tried therefor"* (emphasis supplied).

However, this historical function can only be carried out if the Grand Jury remains truly free and independent of outside influences. As was stated by Mr. Justice CALLAGHAN in *People v Both* (118 Misc 414, 423): "The life and liberty of the individual depend largely upon the citizens who are called from all walks of life to act as jurors. They are in every instance the sole judges of the facts, and, when called as grand jurors, they are the judges of the law as well as of the facts. The administration of the criminal law lies largely with grand and petit juries. It is through the jury system alone that the people have a part in the administration of the law. It is important, therefore, that no undue influence or coercion be exerted at any stage of a prosecution to influence unduly the judgment of a juror." (See, also, *People v Cunningham,* NYLJ, April 28, 1977, p 10, col 4; *People v Benin,* 186 Misc 548; *United States v Rintelen,* 235 F 787.)

Clearly, this is not a case in which the Grand Jury has voted to reconsider the charges *sua sponte* (see *People v Stecker,* 141 Misc 417; 42 CJS, Indictments and Informations, § 25), nor is it a case in which the court having charge of the Grand Jury, upon an appropriate showing, has directed that the charges be resubmittted following a failure to indict (CPL 190.75, subd 3; see *People ex rel. Flinn v Barr,* 259 NY 104; *People v Potter,* 50 AD2d 410). Under the facts of this case it was improper for either the Special Prosecutor or the court, ex parte, to have interceded in the proceedings once the Grand Jury had voted to dismiss.

To sanction such a procedure, no matter how well intentioned it may have been in this case, would permit prosecutors in the future to coerce or badger grand jurors to change their solemnly arrived at determinations. Nevertheless, while firmly convinced of the grave impropriety underlying the present indictment, this court is without jurisdiction to deal with it a this juncture. However, in the light of the views here expressed, the learned Justice at the Extraordinary Special and

Trial Term may wish to reconsider his determination should an application be made therefor.

GULOTTA, P. J., MARTUSCELLO, COHALAN and SHAPIRO, JJ., concur in *Per Curiam* opinion; DAMIANI, J., concurs in the result.