■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS SALTERS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered April 27, 1978, convicting him of grand larceny in the third degree and criminal possession of stolen property in the third degree, upon a jury verdict, and imposing sentence. Judgment affirmed. The defendant's contention that the trial court committed reversible error in denying his request to charge petit larceny as a lesser included offense of grand larceny in the third degree is without merit. The jury in analyzing the evidence could have only found either that the money was taken by the defendant from the wallet on the person of the police decoy, or, as defendant claimed, that he found the money on the subway step. A finding by the jury under the former would constitute grand larceny in the third degree (Penal Law, § 155.30, subd 5), and under the latter, the finding of money in a public place would constitute no crime (see People v Cunningham, 73 AD2d 976). The evidence permits no other finding. Under the posture of the evidence in this case it would not have been proper to charge petit larceny (Penal Law, § 155.25) since there is no basis on which a jury might have found defendant guilty of petit larceny without resorting to sheer speculation (People v Mussenden, 308 NY 558; People v Scarborough, 49 NY2d 364). The dissent, on the basis of selective application of portions of the dicta in Scarborough, and by extraction and stitching together of bits of evidence and nonevidence, postulates the possibility of a jury verdict of guilty of petit larceny. In order to arrive at such a finding, the jury would have had to engage in the very practice which juries are admonished to forbear, and which is clearly proscribed by Scarborough and Mussenden, namely, the process of speculation. We have examined the defendant's other contentions and find them to be without merit. Mollen, P. J., Gibbons and Gulotta, JJ., concur.

Martuscello, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum, in which Damiani, J., concurs: At 2:40 P.M. on September 28, 1977, defendant entered the Queens Plaza IND subway station. Police Officer Joseph Edwards, as part of a decoy operation, was allegedly seated on stairs leading from the street to a mezzanine where the token booth was located. He was dressed shabbily like a "wino", with a bag* "across [his] shoulder * * * over [his] body with one strap going over". Directly in front of Edwards, 30 feet away, was Police Officer Joseph Russomanno, while a backup officer was stationed in the street. As the defendant walked down these stairs he picked up a dollar bill and play money belonging to Edwards. The evidence strongly conflicts as to where the money was when defendant took it. Based on these facts, in an indictment filed November 22, 1977, defendant was charged with grand larceny in the third degree and criminal possession of stolen property in the third degree. The trial commenced on March 21, 1978. Police Officer Edwards testified for the People that while sitting on the stairs on the subject day he felt a tug on the bag and heard a noise as if an object hit the stairway. He saw the red billfold that had been set up in the side compartment of the bag hit the stairway. A dollar bill and "play money" that had been in it were now gone. On cross-examination Edwards stated that as part of the decoy operation the bag had been kept unzipped, with the billfold sticking out. Police Officer Joseph Russomanno testified for the People that the defendant took the billfold out of the bag that was over Edwards' shoulder and removed money from it. However, on cross-examination he conceded that in the felony complaint he did not mention a wallet being taken from the person of Edwards. Defendant then testified in his own behalf that at the time in question he was on the way to his place of employment. As he was walking down the stairs to the subway station he saw a folded dollar bill on the step. He picked up the dollar and took five or six steps when the officer grabbed him. He did not take the dollar bill and play money from the wallet of the decoy officer. On cross-examination, defendant testified as follows: "Q And, well did you see Police Officer Edwards on the stairs when you came down those stairs? A I saw someone, yes, laying down on the steps. Q How was he laying on the steps? A Like this here, like he is asleep or drunk. Q Did he have a shoulder bag? A Yes. Q Where was the shoulder bag? A I guess in his lap or on his shoulder. I could not exactly say. Q And where did you find this dollar bill? A Right on the last step from the landing going to the booth. Q And, where was Police Officer Edwards in relation to that last step? A You mean the one that was laying down? Q Yes? A Where was he at? Q Yes? A I could not say exactly. I know he was on the step, but I could not exactly say what part, exactly where he was sitting. Maybe by the middle of the step, but he was on the step. Q You never reached into a bag and take [sic] out that wallet, that billfold? A No, I did not." Following completion of defendant's testimony, the jury was charged only on the crimes of grand larceny in the third degree and criminal possession of stolen property in the third degree. Defense counsel requested a charge on petit larceny as a lesser included offense. Criminal Term denied the request. In my view the denial constituted reversible error. Subdivision 5 of section 155.30 of the Penal Law provides: "A person is guilty of grand larceny in the third degree when he steals property and when: * * * 5. The property, regardless of its nature and value, is taken from the person of another." Section 155.25 of the Penal

---

* The bag was not introduced in evidence as it was no longer in existence.

Law provides: "A person is guilty of petit larceny when he steals property." Whether a lesser included offense must be charged is determined by CPL 300.50. Subdivision 1 of that section sets forth the circumstances under which a Judge is authorized to charge a lesser included offense. Subdivision 2 of that section mandates that a request for a charge of a lesser included offense be granted if such a charge is authorized under subdivision 1. A Judge is authorized to charge a lesser included offense if the following two conditions are met: "One of these conditions is that the relationship of the alternative crimes to one another must be such that it is 'impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree', the statutory definition of a 'lesser included offense' (CPL 1.20, subd 37). The second, summarily stated, is that there must exist a 'reasonable view of the evidence' under which it could be found that a defendant committed the lesser included offense but did not commit the greater one *(People v Johnson,* 39 NY2d 364, 367; *People v Shuman,* 37 NY2d 302, 304; *People v Mussenden,* 308 NY 558). * * * The test of whether a 'lesser included offense' is to be submitted is certainly not that it is probable that the crime was actually committed or even that there is substantial evidence to support such a view. It suffices that it is supportable on a rational basis or, put another way, by logical necessity." *(People v Henderson,* 41 NY2d 233, 235-236.) "If, as it is most often so, the People's case is a composite of several witnesses and perhaps exhibits, some segments of the evidence—and even some portions of a single witness' testimony—may be impugned, cast in doubt or discredited by the introduction of contradictory proof or by disclosure on cross-examination of faulty memory, bias, lack of adequate vantage point for observation and the like. If the record demonstrates one of these or some other rational basis on which the jury might reasonably discredit the proof which would establish defendant's commission of the greater crime, yet accept that of guilt of the lesser, then the statute compels submission of the lesser offense if requested." *(People v Scarborough,* 49 NY2d 364, 371.) On the other hand, a refusal to submit a lesser included offense is justified "if, on the whole record, there is not some identifiable, rational basis on which the jury could reject a portion of the prosecution's case which is indispensable to establishment of the higher crime and yet accept so much of the proof as would establish the lesser crime" *(People v Scarborough, supra,* pp 369-370.) Applying these principles here, it becomes apparent that the request to charge petit larceny should have been granted. Certainly petit larceny is a lesser included offense of grand larceny. Moreover, there is a reasonable view of the evidence which would have justified a finding of petit rather than grand larceny, and the jury could rationally have rejected so much of the prosecution's case as indicated that the defendant stole from the *person* of Edwards without rejecting the proposition that defendant did steal Edwards' property. It must be noted that in reviewing the evidence for purposes of determining whether a lesser included offense should have been charged, the evidence must be considered in a light most favorable to the defendant since the jury is free to accept or reject part or all of the defense or prosecution evidence (see *People v Asan,* 22 NY2d 526; *People v Battle,* 22 NY2d 323). A careful examination of the evidence shows at the outset that defendant conceded that he picked up a dollar bill. What is not clear from defendant's testimony is just where the money was vis-à-vis Edwards when he picked it up. However, defendant's testimony could be read to indicate that defendant picked up a dollar bill from a step on which Edwards was sitting (whether this itself could constitute petit larceny is an

issue which need not be reached). While defendant denied that he took the money from a billfold, the People's witnesses claimed that the money was in a billfold located within Edwards' shoulder bag. The jury, without resorting to or engaging in sheer speculation *(People v Scarborough, supra; People v Discala,* 45 NY2d 38), could have credited the People's witnesses to the extent of finding that the money was in a billfold and credited the defendant's testimony to the extent of finding that it was on a step near Edwards but not in Edwards' shoulder bag. Stated otherwise, the jury may have chosen, in view of defendant's testimony, not to credit so much of the People's evidence as placed the billfold in Edwards' bag, which is a necessary element of the grand larceny conviction. Under these facts it is clear that the jury may properly have returned a verdict of petit larceny if they had been presented with that option. The rendering of such a verdict would have been correct since there would be a taking of Edwards' property from his immediate presence but not from his person (cf. *People v Blume,* 48 AD2d 616; *People v Dotson,* 46 AD2d 690; *State v Lucero,* 28 Utah 2d 61; *Terral v State,* 84 Nev 412). The majority's reliance on *People v Cunningham* (73 AD2d 976), where this court upheld a refusal to charge petit larceny, is misplaced. In *Cunningham,* the defendant testified in his own behalf but did not challenge the prosecution evidence that in a decoy operation similar to the one at bar he took the money from a shoulder bag *worn* by the police decoy. There was, of course, no reason to charge petit larceny. Here, where the defendant has cast doubt on that scenario both by his own testimony and cross-examination of the People's witnesses (cf. *People v Scarborough, supra),* petit larceny should have been charged. Instructive in this regard is *People v Malave* (21 NY2d 26). In *Malave,* a case involving a prosecution for the sale of narcotics, the Trial Judge submitted to the jury only those charges based on sale. He refused to submit charges involving possession on the ground that either the defendant sold or did not sell. The Court of Appeals, in reversing the conviction and ordering a new trial, stated (pp 29-30): "When one reads the testimony of the policeman Wilson that he bought the drugs from this defendant at the times specified, there is a considerable doubt as to the transactions. A long time elapsed between the purported sales to Officer Wilson—February 20, March 6 and March 13—and defendant's arrest by another officer on March 31, 1964, particularly as to the first two offenses. When Wilson was a witness at the trial which began in September, 1964, he testified as to the facts entirely from notes. The drugs were delivered by him to the regular police channels for testing and there were records which corroborated him as to these deliveries. A jury might well have believed that defendant possessed the drugs but that it had not been proven beyond a reasonable doubt that he sold them. Defendant himself testified at some length and denied ever seeing or knowing the complaining officer Wilson. Yet in his categorical denials he largely limited himself to saying that he had never sold him narcotics. He admitted, however, that he had been a user of narcotic drugs. The jury might have taken this as, in some part at least, a denial of sale but an implicit admission of possession. Sale is not the only permissible inference to be drawn from this record." By a parity of reasoning, the same result is in order here. Defendant by his testimony admitted to taking the property, but not from Edwards' person. The jury may have taken this as an implicit admission of stealing property (petit larceny), but a denial of stealing from Edwards' person (grand larceny). Accordingly, the judgment of conviction should be reversed and a new trial ordered.

