OPINION OF THE COURT
Stephen G. Crane, J.
The People moved pursuant to CPL 190.75 (3) for authorization to resubmit to another Grand Jury the charges that the Fourth February-March Grand Jury had dismissed against defendants Jose C. and Elvis R[1] The standards the court must apply in deciding whether to grant this motion were summarized in People v Dykes (86 AD2d 191, 195):
“[A] determination by the Grand Jury that the evidence before it does not warrant an indictment should end the matter and there should not be a resubmission unless it appears, for example, that new evidence has been discovered since the former submission; that the Grand Jury failed to give the case a complete and impartial investigation; or that there is a basis for *690 believing that the Grand Jury otherwise acted in an irregular manner * * *
“Although a case may be resubmitted for reasons such as those enumerated above, a District Attorney is not entitled, and should not be permitted, to resubmit a case merely because he is dissatisfied with or disagrees with the conclusion of the Grand Jury.”
We have at bar perhaps the first case to give dimension to the second test mentioned in Dykes: “that the Grand Jury failed to give the case a complete and impartial investigation.”[2]
GRAND JURY PROCEEDINGS
On March 15, 1984, the Fourth February-March 1984 Grand Jury heard testimony from three police officers. The People submitted all but the charge of attempted murder, second degree, reserving this count until the jurors could hear testimony from Stanley M., the civilian victim under this charge. The Grand Jury then voted to indict defendant Elvis R. for the various crimes the prosecutor had submitted to that body including counts of attempted murder, first degree.[3] But the case remained open for the reserved testimony of Stanley M. and to give the defendant an opportunity to exercise his statutory right to testify (CPL 190.50 [5]). Therefore, the Grand Jury heard Stanley M., Elvis R. and Jose C. testify. Because the testimony of Jose C. conflicted with all the other witnesses including Elvis R., the People sought an indictment against Jose C. for peijury. Ultimately, the Grand Jury voted to dismiss all charges against *691 both defendants, thereby reversing itself as to defendant Elvis R, now that they had heard him and Jose testify.
TESTIMONY
The testimony showed that defendant, Elvis R, with a substantial number of friends, had attended a party near Columbus Avenue and 96th Street, in the County of New York. A dispute broke out, and Elvis and his friends found themselves on the street confronting Stanley M. Elvis pulled a gun and fired at Stanley. Two officers out of uniform saw this, and, when Elvis pointed his gun, one officer fired a shot. Elvis ran north. The pursuing officers exchanged fire with Elvis; one officer and Elvis sustained wounds during the pursuit. Eventually, Elvis was captured in Central Park. The gun was nearby.
Elvis testified, too, that there was a crowd, but that it was Stanley who had the gun. When Stanley dropped it, Elvis picked the gun up from the ground. In fear, he fired some shots into the sidewalk. When Elvis saw two other individuals with guns who shot at him, he did not know they were police officers. He ran, carrying the pistol into Central Park.
Jose C. testified as well. From his observations, he did not even see Elvis with a gun but saw another man firing toward an individual in the crowd.[4]
THE MOTION
It seems that the acting foreman of the Fourth February-March 1984 Grand Jury, responding to the invitation of the impaneling Justice, addressed a lengthy letter to Honorable Robert M. Haft, the Justice then presiding in this part. The grand juror expressed many frustrations with the then completed Grand Jury service and criticized the attitude of prosecutors that, according to the writer, gave the impression that the Grand Jury was expected to be a rubber stamp.
Some five months after the February-March 1984 Grand Jury dismissed all charges against both defendants, the People made this motion to resubmit.[5] Based mainly on the letter of the acting foreman, they argue that the grand jurors had failed to give the case a complete and impartial investigation.
The People also contend that even if the Grand Jury had rejected all testimony of the prosecution witnesses and believed only Elvis R., it should at least have indicted for criminal *692 possession of a weapon, third degree, and reckless endangerment, first degree — if the grand jurors had followed their legal instructions.
THE GRAND JUROR’S LETTER
The letter from the acting foreman of the Fourth February-March 1984 Grand Jury is a remarkable document. Whoever he or she is,[6] I applaud the author’s courage in writing and thoughtfulness in expressing his or her sentiments.
This letter undercuts the prosecutor’s motion. If anything, it shows a complete and impartial investigation of all matters that came before the author of this letter. However, nothing in the papers on this motion establishes that this letter writer deliberated on the presentation against Elvis R. and Jose C. I have given no effect to this letter in disposing of the People’s application.
DECISION
No question exists of the legal sufficiency of the evidence before the Grand Jury, if believed, to support an indictment for each charge submitted against Elvis and Jose. Indeed, if the evidence of the People’s witnesses be rejected — as the grand jurors apparently did — sufficient legal evidence remained from the testimony of Elvis alone to indict him for reckless endangerment, first degree (Penal Law § 120.25) and criminal possession of a weapon, third degree (Penal Law § 265.02 [4]). He admitted shooting into the sidewalk with a crowd around and possessing a loaded operable firearm at locations that were not his home or place of business.
This court is not saying that the grand jurors were mandated to indict and that, therefore, a resubmission is required for them to perform their duty. Of course, if they are following their oaths and the instructions on the law, when they have heard and believed legally sufficient evidence which, if unexplained and uncontradicted, would warrant conviction (People v Dunleavy, 41 AD2d 717, affd 33 NY2d 573; People v Ward, 37 AD2d 174, 176; CPL 70.10, 190.65),[7] they may vote an indictment and, as *693 responsible citizens, ought to do so. Neither is this court deciding whether our Grand Juries possess or lack the power “to nullify the law by refusing to indict notwithstanding the presentation to it of evidence sufficient to sustain an indictment.” (People v Valles, 62 NY2d 36, 43 [Meyer, J., dissenting].)[8] Resolution of this issue does not really assist in determining whether to authorize resubmission on the ground that the first Grand Jury failed to give a complete and impartial investigation. Rather, the court presumes that the members of the Fourth February-March 1984 Grand Jury acted faithfully to their oaths. (Cf. 21 NY Jur, Evidence, § 106.)
The focus instead must be maintained on the only issue: Did the Grand Jury fail to give the case a complete and impartial investigation? The defendants point to the numerous and incisive questions posed throughout the presentation by members of this Grand Jury.[9] True, the grand jurors were active and analytical. Yet, even an intelligent Grand Jury is capable of performing an incomplete or partial investigation.
Crediting the Grand Jury, as the court does, with following the legal instructions given by the Assistant District Attorney and with acting according to the oath its members took, the court concludes that they must have given the case an incomplete or partial investigation. In reaching this conclusion, the court presumes that they drew every reasonable inference in favor of the defendants and rejected on credibility grounds the testimony that would tend to inculpate Elvis R. All other efforts to rationalize the result fail.
One rationalization that can be imagined is that the grand jurors pieced together a completely exculpatory version selecting snippets of testimony from one or another witness but *694 believing no one, including Elvis R, entirely. This procedure is irrational and contrary to law. (See, e.g., People v Scarborough, 49 NY2d 364, 373; People v Salters, 75 AD2d 901.) It also ignores the circumstance in the case at bar that the grand jurors had already voted initially to indict before they heard Elvis R. testify.
Another possibility presented by the circumstances is that the Grand Jury accepted the instructions on justification but applied them erroneously to all the charges including criminal possession of a weapon, third degree. Whether or not justification would be a defense under the facts at bar to reckless endangerment, first degree (see, People v Zurita, 76 AD2d 871; People v May, 55 AD2d 739; compare, People v Padgett, 60 NY2d 142, with People v Huntley, 59 NY2d 868, affg 87 AD2d 488, and People v Albino, 104 AD2d 317), turns perhaps on an assessment of the reasonableness of defendant’s actions in using deadly physical force to defend himself. (Penal Law §§ 35.05, 35.15.) Justification is not, however, a defense to the possession count. (People v Almodovar, 62 NY2d 126, 130.)
Lastly, the Grand Jury may have resorted to some notion of a defense of temporary, lawful possession. Yet, the Assistant District Attorney furnished no instructions respecting such a defense. This omission was eminently appropriate. From the very testimony of Elvis R. it is clear that he possessed the weapon from the moment Stanley M. dropped it to the ground and while Elvis fired shots into the sidewalk and during his flight of a few blocks into Central Park. To be sure, that portion of his possession that occurred while Elvis was disarming and fending off Stanley M. may, if the possession had ended there, have required a charge of temporary, lawful possession. (Contrast, People v Williams, 50 NY2d 1043, with People v Davis, 61 AD2d 760; see, People v Persce, 204 NY 397, 402; People v Pendergraft, 50 AD2d 531, 532; People v Messado, 49 AD2d 560; People v Harmon, 7 AD2d 159.) Likewise, had Elvis testified that he was intending to take the weapon to the nearest police officer, such an instruction may have been appropriate. (People v La Pella, 272 NY 81.) The facts, as Elvis testified to them, however, did not call for such an instruction to the Grand Jury[10] *695 none of whose members raised the issue with the Assistant District .Attorney. (See, People v Calbud, Inc., 49 NY2d 389, 395, n 1.)
From the foregoing analysis, it becomes clear that the grand jurors applied their own notions of the law in voting no true bill. They either applied improperly the justification defense that was charged to the count of criminal possession of a weapon, third degree, or adopted some notion of temporary, lawful possession on which they were never instructed. In either event, they departed from the law as delivered by the Assistant District Attorney. It is unnecessary to guess at their motives for this departure.[11] The conclusion, then, is that the Fourth February-March 1984 Grand Jury failed to follow its legal instructions in this case; in doing so it gave an incomplete investigation that was other than impartial.[12]
REMEDY
Since the locus of the Grand Jury’s failure to give a complete and impartial investigation was the charge of criminal possession of a weapon, it might be argued that only this charge should be resubmitted. But, to limit the resubmission would be to speculate on the extent of the Grand Jury’s error.[13] That its incomplete investigation can be discerned in its treatment of the weapon charge does not mean that its error was limited to that count. Therefore, the court has determined that resubmission of *696 all counts relating to the entire episode — including the perjury-charge against Jose C. — should be authorized within 45 days.

. True names concealed in view of the dismissal of charges by the Grand Jury.

. The other standards mentioned in People v Dykes (86 AD2d 191) for resubmission do not apply at bar. No new evidence has been uncovered since the Grand Jury voted to dismiss all charges. (See, e.g., People v Zirpola, 88 AD2d 758; People v Martin, 71 AD2d 928,929-930.) Neither is there present an irregularity such as the court or prosecutor interceding ex parte to reverse a Grand Jury vote to dismiss (People v Groh, 57 AD2d 389, 391-392); the appearance of an unauthorized prosecutor before the Grand Jury (People v Di Falco, 44 NY2d 482); or the lack of a quorum or the participation of jurors who did not hear the entire presentation. (Cf. People v Brinkman, 309 NY 974; People v Petrea, 92 NY 128, 142-143; People v White, 44 AD2d 749; Matter of Pesner v County Ct, 42 AD2d 275; People v Colebut, 86 Misc 2d 729 [Rothwax, J.]; see also, Pitler, New York Criminal Practice Under the CPL § 8.6 [1972].)

. Against defendant Elvis R., the People asked the Grand Jury to consider two counts of attempted murder, first degree (as to two plain-clothes police officers), one count of attempted murder, second degree (as to the civilian named Stanley M.), two counts of criminal possession of a weapon, second degree (respecting shots fired at the police officers on 97th Street and the civilian on 96th Street), one count of criminal possession of a weapon, third degree (not at defendant’s home or business), and one count of reckless endangerment, first degree (in firing into the sidewalk with a crowd around).

. For this testimony, the prosecutor asked the Grand Jury to consider charges of peijury, first degree, against Jose C.

. Though made on notice to the accused, this motion could have been made ex parte. (People v Ladsen, 111 Misc 2d 374 [Lang, J.].)

. The copy of the letter annexed to the motion conceals the signature and identity of the author of this letter.

. CPL 190.65 (1) provides: “Subject to the rules prescribing the kinds of offenses which may be charged in an indictment, a grand jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense provided, however, such evidence is not legally sufficient when corroboration that would be required, as a matter of law, to sustain a conviction for such offense is absent, and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense.” (Emphasis added.)
*693 The permissive word, underscored above, establishes the optional nature of the grand juror’s duty even where there is legally sufficient evidence. But, it might be argued that the option simply accommodates the right of the Grand Jury to make credibility determinations and nothing more.

. The historical function of the Grand Jury “as a buffer between the State and its citizens, protecting the latter from unfounded and arbitrary accusations” (People v Calbud, Inc., 49 NY2d 389,396; Matter of Keenan v Gigante, 47 NY2d 160, 167-168) does not logically support the argument that the Grand Jury has power to nullify prosecutions that are neither arbitrary nor unfounded.

. Defendants also suggest that this motion is made merely because the District Attorney is disappointed with the failure to indict and disagrees with the grand jurors’ decision. The Assistant District Attorney confesses to her disappointment and disagreement. This, of course, cannot furnish any ground for resubmission as she readily admits. (People v Dykes, 86 AD2d 191, 195, supra; People v Martin, 71 AD2d 928, 929.)

. Whether on trial and at the request of defendant the instruction of temporary, lawful possession would be required need not be decided here and now. The Grand Jury need not be instructed with the same precision as the petit jury. (People v Calbud, Inc., 49 NY2d 389, 394, supra.) In this connection it is interesting to note the proposal to add a new section 265.06 to the Penal Law to make temporary possession an affirmative defense. (See, 1985 Report of the Advisory Committee on Criminal Law and Procedure to the Chief Administrator of the Courts of the State of New York, at 30.)

. As asserted earlier in this opinion (p 693, supra), the Fourth February-March 1984 Grand Jurors are credited with faithfulness to their oaths. Nonetheless, it is conceivable that they were vexed at the manner in which this case was presented. After their initial vote on an indictment, they were requested to reopen the case first to hear additional prosecution witnesses and later to hear testimony from Elvis R. and other defense witnesses. After Elvis made a statement, the assistant cross-examined him at such length and with such tenacity that even the reader of the transcript is forced to sympathize with him. The proceedings were extruded so that the assistant was required to ask the Grand Jury to vote to extend its term. It did so by a bare 12 votes. And, to top this all off, the Grand Jury was saddled with a new charge to consider of perjury against Jose C.

. In People v Groh (97 Misc 2d 894, 898-899), Justice Rosenberger stated: “The court [in People v Neidhart, 35 Misc 191] noted * * * that there were no facts to justify the prosecutor’s opinion that the Grand Jury had misunderstood the law. By implication, such a factual showing could be the basis of a resubmission order.”

. The same reasoning is invoked when a court is asked to review the verdict of a petit jury where an error pertains to part of a count or to one of several counts. (See, People v Root, 68 AD2d 8, 12-13; Pfeil v Elkcom Co., 51 AD2d 553, 554.)