OPINION OF THE COURT
Joseph E. Fahey, J.
An indictment has been filed against the accused, Thomas *196 Fetcho, charging him with the crimes of criminal possession of stolen property in the first degree in violation of section 165.54 of the Penal Law and criminal diversion of prescription medications and prescriptions in the first degree in violation of section 178.25 of the Penal Law.
The accused has moved for inspection of the Grand Jury minutes to determine their legal sufficiency pursuant to CPL 210.30. The People have consented to this request and provided the minutes to this court for its review. On May 27, 1997, the court released pages 372-380 of the minutes which are the legal instructions given to the Grand Jury for the offenses with which the accused is charged pursuant to CPL 210.30 (3). Review and discussion of these instructions is warranted.
Article I, § 6 of the Constitution of our State provides: "No person shall be held to answer for a capital or otherwise infamous crime * * * unless on indictment of a grand jury”.
CPL 190.25 (6) provides: "The legal advisors of the grand jury are the court and the district attorney, and the grand jury may not seek or receive legal advice from any other source. Where necessary or appropriate, the court or the district attorney, or both, must instruct the grand jury concerning the law with respect to its duties or any matter before it, and such instructions must be recorded in the minutes.”
The law is well settled that: "[A] Grand Jury need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law.” (People v Calbud, Inc., 49 NY2d 389, 394.)
Notwithstanding this principle, it is equally important that instructions be complete: "The prosecutor’s duty of fair dealing extends not only to the submission of evidence, but also to instructions on the law, for, by statute, responsibility for instructing the Grand Jury on the law rests solely with the court and the prosecutor, and the Grand Jury may not seek legal advice from any other source (CPL 190.25 [6]; People v Di Falco, 44 NY2d 482, 486-487; Matter of Report of Special Grand Jury, 77 AD2d 199, 202).” (People v Lancaster, 69 NY2d 20, 26.)
In the instant case, the defendant was one of four individuals being investigated by the Medicaid Fraud Unit of the New York State Attorney-General’s Office for the theft and sale of certain prescription drugs from the State University of New York Health Science Center and Crouse-Irving Memorial Hospital in Syracuse, New York. The defendant Fetcho’s al *197 leged role in this scheme was that he purchased these drugs below market price for resale to the general public from his business, Ryan’s Pharmacy. No direct evidence was presented to the Grand Jury that the defendant knew or acknowledged that the drugs he was purchasing were stolen. Instead, the prosecution appeared to rely upon the presumption set forth in section 165.55 (2) of the Penal Law. Indeed, every attempt to establish the defendant’s guilty knowledge through the testimony of the cooperating accomplice resulted in the accomplice surmising or guessing the defendant knew. Were it not for the existence of the presumption, the court would dismiss count one charging the defendant with criminal possession of stolen property in the first degree in violation of section 165.54 of the Penal Law. It is against this backdrop that discussion of the legal instructions given the Grand Jury is appropriate.
On May 15, 1996, at the conclusion of the presentation of testimony (which took place the following five dates: Apr. 3, 4, 5, 8, 9, 1996; May 2, 1996), the Grand Jury was given legal instructions concerning all four of the subjects of the investigation. Instructions involving this defendant occurred last. At the outset, the Grand Jury was informed of the various actions it could take under CPL 190.60. They were likewise given a brief instruction on the standard of proof necessary to return an indictment.
Immediately at the outset of these instructions, the grand jurors were told that the prosecution was "going to ask you to return a bill against several people.” Following the prefatory instructions just outlined, the prosecutor began instructing the Grand Jury utilizing a proposed indictment. The use of this proposed indictment occurred in the instructions concerning each defendant and involved reading both the accusatory language, as well as the factual allegations contained in each count. Interspersed in this reading were the legal definitions of various elements contained in the Penal Law. At the time the Grand Jury was instructed on the first of these subjects, they were given a complete set of instructions concerning the definitions of larceny and criminal diversion of prescription medications contained in articles 155 and 178 of the Penal Law; however, these definitions were at best alluded to during the instructions on the remaining defendants with reference made to the first set of instructions given involving the first subject. Indeed, by the time the Grand Jury was instructed on the law concerning the charges to be considered against the defendant Fetcho, little more than a reading of the proposed indictment *198 occurred. The only amplification given to the proposed indictment was pointing out the differences in the charges proffered against the previous defendant, a definition of the element of intent and a reading of the presumption contained in section 165.55 (2) of the Penal Law previously discussed. At the conclusion of these instructions, copies of the proposed indictments were left for the grand jurors’ review.
In this court’s view, the instructions given with respect to the defendant Fetcho were inadequate and both utilizing and leaving the proposed indictment for the Grand Jury’s consideration impaired the integrity of the Grand Jury within the meaning of CPL 210.35 (5) requiring dismissal.
In assessing the prejudice to the defendant involving the use of the proposed indictment, the only decision offering any guidance is People v Richard (148 Misc 2d 573 [Albany County Ct 1990]). There, Judge Traficanti, passing upon similar conduct, observed: "The District Attorney also made repeated reference to a 'proposed’ indictment which was physically present in the Grand Jury room and used to examine the professor. Further on in the proceedings and before the vote, the District Attorney referred to it as the 'current indictment’. The Grand Jury is the sole body empowered to judge the facts and vote an indictment. (CPL 190.05, 190.25 [5]; 190.60.) The District Attorney is the Grand Jury’s legal advisor. (CPL 190.25 [6].) For the District Attorney to refer to an indictment which is not yet voted, and for which the evidence is not yet completely presented sends a strong and unmistakable message to the Grand Jury that the District Attorney wants and expects the Grand Jury to vote the indictment. Such activity interferes with the sovereignty of the Grand Jury and violates its integrity as the exclusive judge of the facts.” (148 Misc 2d, at 577.)
In defense of the use of the proposed indictment, the Attorney-General contends he gave a cautionary instruction sufficient to alleviate any taint in the proceedings. He likewise points out that the conduct in Richard (supra) which resulted in the indictment being dismissed involved more errors than merely the use of the proposed indictment. While the conduct in Richard (supra) did encompass more than simply using the proposed indictment, it is equally significant that Judge Traficanti dealt with this topic separately in condemning the practice. Similarly, while the Attorney-General did give a caution ary instruction about its significance, there is no question about what action he intended the Grand Jury to take since he told them point blank at the outset of the instruc *199 tions: "We are going to ask you to return a bill against several people” (Grand Jury minutes, at 372).
In People v Batashure (75 NY2d 306) the Court of Appeals affirmed the dismissal of an indictment where the prosecutor instructed the Grand Jury that the fact that a case was being submitted to them for a vote "without any recommendation” meant that the evidence was legally sufficient to warrant an indictment, if believed, impaired the integrity of the proceedings. Judge Kaye, writing for a unanimous bench, observed: "It is simply not permissible for a District Attorney to inform grand jurors, who by statute and Constitution, have the unique responsibility to decide whether to vote an indictment, that as a matter of law the prosecutor has already determined that there is enough evidence to warrant that action. At the very least, such an instruction delivered to laypersons carries an unacceptably high risk that they might misconstrue or undervalue their own role in reviewing the evidence, or even assume that the defendant should be indicted.” (75 NY2d, at 310.)
It seems obvious that this request, compounded by the use of the proposed indictment for instruction, and the act of leaving the proposed indictment for their perusal during deliberations, also: "sends a strong and unmistakable message to the Grand Jury that the District Attorney wants and expects the Grand Jury to vote the indictment.” (People v Richard, 148 Misc 2d, supra, at 577.)
Finally, it cannot be said that this conduct, viewed against the totality of the instructions was harmless since the vote to return an indictment was by the bare threshold requirement of 12 with 4 abstentions. If even one grand juror was improperly influenced by this conduct, then the outcome of the proceedings would have been different and the accused would not be facing the onerous prospect of defending himself publicly in a criminal prosecution.
It is this court’s view that the Grand Jury proceedings are defective to the point where integrity of the Grand Jury was impaired with prejudice to the defendant within the meaning of GPL 210.20 (1) (a) and 210.35 (5). The indictment is dismissed with leave granted to the People to re-present the matter to a new Grand Jury, if they choose.