OPINION OF THE COURT
Ralph A. Fabrizio, J.
In this decision pursuant to defendant’s application to dismiss the indictment, the court is faced with what appears to be an issue of first impression in any published decision: whether it was proper for the People, upon learning they had not voted either to indict or dismiss, to ask the grand jury to recommence their deliberations by reading an instruction modeled on one approved to be given to a deadlocked petit jury. Assuming, but not deciding, that it is legally permissible to give an accurate and balanced charge to a grand jury in this type of situation, here, the instruction given was coercive, unbalanced, and not at all consistent with the law applicable to grand jury practice, and it impaired the overall integrity of this grand jury proceeding. Therefore, the indictment is dismissed.
Defendant was arrested on December 1, 2013, and subsequently charged in a felony complaint with, inter alia, criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]). At the arraignment, the People served notice pursuant to CPL 190.50 that they intended to present the charges to the grand jury. The defendant served written notice of his intent to testify before the grand jury. Bail was set, and the case was adjourned for grand jury action. On December 4, 2013, the People presented evidence, including testimony of a police witness, to a grand jury panel. Defendant waived immunity and testified before that panel on December 11, 2013. Six days later, the People recalled the police witness and then had an additional police witness testify. The prosecutor read appropriate legal instructions and asked the grand jury to consider voting the specific charges contained in the indictment.
At some unspecified point later that day, the prosecutor reentered the grand jury chamber and made the following record: “I’ve been informed through the grand jury foreperson that as to the charges that I’ve asked you to consider, you’ve *811 been unable to take grand jury action.” The prosecutor then instructed the grand jury as follows:
“In order to return an indictment, it is your duty to consult with one another and to deliberate together with the view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself but do so only after an impartial consideration of all the evidence with your fellow grand jurors.”
The prosecutor went on to tell the grand jurors they should “not hesitate to re-examine your own views and change your opinion if otherwise convinced by the evidence.” They were also told not to
“surrender honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a decision. You are not partisans. You are judges, judges of the facts. Your sole interest is to ascertain the truth from the evidence in this case.”
The prosecutor concluded these instructions by stating, “with this view, I direct that you continue your deliberations.”
CPL 190.60 provides that
“[ajfter hearing and examining evidence ... a grand jury may:
“1. Indict a person for an offense . . .
“4. Dismiss the charges before it”
or elect to take affirmative action in additional legislatively-authorized situations not directly relevant here (emphasis added). By its language, the legislature prescribed that the decision to take any affirmative action is permissive, and not mandatory. (People v Sullivan, 68 NY2d 495, 500-501 [1986].) In an exercise of their permissive legal authority, “the concurrence of at least twelve members” of the grand jury is required before any form of “affirmative official action” can be taken, including the filing of an indictment or a dismissal. (CPL 190.25 [1]; People v Aarons, 2 NY3d 547, 549-551 [2004].) Where 12 grand jurors cannot reach a unanimous decision on what affirmative action to take in a particular case, it cannot be inferred they intend to take any affirmative action, including dismissing the charges before them. (Id. at 552.) Thus, upon being informed no 12 grand jurors authorized to vote on a particular case have voted to take the same type of affirmative action, a prosecutor may ask the grand jury to “cease deliberations” in order to allow the
*812 prosecutor to “present additional evidence” for their consideration. (Id. at 549.) This is considered a “re-presentation of charges” to the same grand jury, for which leave of the court is not required. (People v Credle, 17 NY3d 556, 560-561 [2011].)
It is an open question about whether a prosecutor who has been told the grand jury has voted and announced that the vote has been neither to indict nor dismiss, and has not asked for any help or guidance, can re-present the same case to the same jury by unilaterally asking that grand jury to deliberate anew on the same charges based on the same evidence. A prosecutor may not ask a grand jury to reconsider a vote for dismissal, although a grand jury may itself sua sponte agree to revisit a dismissal vote prior to the filing of the finding of dismissal with the empaneling court. (People v Montanez, 90 NY2d 690, 694 [1997].) Here the grand jury did not vote to dismiss, indict or to take any affirmative grand jury action. When they voted, 12 jurors never agreed on any affirmative action. The prosecutor nonetheless injected himself into the deliberation process and directed the grand jury to do something which they might have done sua sponte—namely reconsider their positions and vote again.
Of course, petit juries are legally and routinely instructed to continue deliberating where they inform the trial judge and the parties they have reached an impasse and cannot render a unanimous verdict. (See People v Aponte, 2 NY3d 304, 308 [2004].) The reason such instructions are appropriate in this situation is because a trial judge has a “responsibility to avoid mistrials” and therefore may “encourag[e] jurors to adhere to their oaths and make one final effort to review the evidence and reach a verdict one way or the other.” (People v Pagan, 45 NY2d 725, 727 [1978].) The question of whether a prosecutor may simply encourage grand jurors to return to deliberate again when informed that a majority has not agreed to take affirmative grand jury action requires, in this court’s opinion, resolution of a number of significant legal questions. The court has not felt the need to ask the parties to brief any such question. The defendant’s motion to inspect asks the court to review the instructions given to this grand jury in this case to determine whether any part is “misleading or improper.” The People, who have custody of the grand jury minutes and know the substance of all legal instructions read, have responded that none of the instructions were “misleading or confusing.” In deciding this motion, the court need not reach this broad issue as the specific instruc *813 tion given in this case following the grand jury’s vote to essentially take no action was coercive and legally inaccurate on many levels.
Assuming, arguendo, that a grand jury may be given a “continue deliberating” type instruction when their vote does not authorize any affirmative grand jury action be taken, such instruction certainly cannot be “unbalanced and coercive.” (Aponte, 2 NY3d at 305.) Here, the first sentence of the instruction given is decidedly unbalanced and coercive. By telling this indecisive grand jury that “[i]n order to return an indictment” they had a “duty to consult with one another and to deliberate together with the view to reaching an agreement,” the prosecutor instructed them to deliberate in order to reach the particular result he was seeking. This is something that, based on longstanding settled law, no trial judge would ever be able to tell a deadlocked petit jury. (People v Faber, 199 NY 256, 259 [1910]; see also Aponte, 2 NY3d at 308; Pagan, 45 NY2d at 727.) Moreover, at a minimum, this instruction undermined what the empaneling judge instructed this grand jury at the beginning of the term, which, of course, under the approved language, accurately reflects the law and tells them they may choose to vote either to indict or to dismiss in any case. (CJI2d[NY] Grand Jury Empanelment.) By instructing the grand jury to now deliberate on the case “with this view” described in this charge, especially after learning they had not voted to dismiss, the prosecutor, acting as legal advisor, gave the panel marching orders to continue deliberating only to indict. This constituted plain error. (See People v Groh, 57 AD2d 389, 392 [2d Dept 1977].)
The remaining parts of the instruction, while not patently coercive in terms of focusing on a specific result, nonetheless were legally incorrect given the audience. It appears as if the prosecutor just took a part of a version of the model instruction whose language is approved for use where a petit jury cannot reach a unanimous verdict, usually called an Allen charge (see Allen v United States, 164 US 492, 501 [1896]), and changed some words in an attempt to make it relevant to a situation where a grand jury had already voted but the vote did not authorize any grand jury action. (See CJI2d[NY] Jury Issues— Jury Deadlocked.) The problem is that in addition to substituting the coercive, result-oriented words “return an indictment” for the neutral words “reach a verdict” contained in that instruction, the prosecutor read legal language intended to be *814 heard by a petit jury. This language has no antecedent in law applicable to the grand jury contained in article 190 of the Criminal Procedure Law.
For example, a petit jury takes an oath which requires them to follow an instruction to deliberate with “a view towards reaching an agreement.” (CJI2d[NY] Deliberation Issue— Deliberation Procedures.) No such “duty to deliberate” instruction exists in language approved to be given by a judge or other legal advisor on the day the grand jury receives its general instructions and begins its work (see CJI2d[NY] Grand Jury Empanelment.) That instruction would be legally incorrect in grand jury practice. “Unlike a petit jury’s obligation to convict upon being convinced beyond a reasonable doubt, the Grand Jury’s authority to indict upon a showing of sufficient evidence is permissive only.” (Sullivan, 68 NY2d at 500 [citations omitted].) In fact, the grand jury can choose to take no action against a defendant or even dismiss charges presented to them where legally sufficient evidence has been presented because of their long-recognized “ ‘mercy-dispensing power [which] is a thing apart from the true duty imposed upon a [petit] jury.’ ” (Id. at 501, citing People v Mussenden, 308 NY 558, 562 [1955].) Put simply, a grand jury has no duty to vote to authorize that any action be taken in any particular case. (Aarons, 2 NY3d at 549-551; People v Foster, 279 AD2d 317, 321 [1st Dept 2001].)
Thus, since the permissive language in “CPL 190.65 allows the Grand Jury to decide that an excessively technical application of the law upon a particular defendant would work an unfairness that would be contrary to the conscience of the community” (Sullivan, 68 NY2d at 500), it was error for the prosecutor to inject himself into the proceeding and instruct this grand jury they had a “duty” to go back and deliberate. Using this language in this context, when there is no indication that the grand jury was asking for guidance or that they wanted to vote again, invites prejudice based upon prosecutorial overreaching. (See Montanez, 90 NY2d at 694-695; Groh, 57 AJD2d at 391-392.) The potential prejudice resulting from giving the grand jury instructions to deliberate again because it was their legal duty to do so was aggravated by the prosecutor’s telling the grand jury that he was directing them to immediately deliberate. Not even a judge could enter the grand jury chamber following a vote and direct the grand jury to go back and deliberate “with a view” toward reaching consensus on any authorized grand jury action. (Cf. Groh, 57 AD2d at 391-392.)
*815 Finally, potential prejudice arose from the prosecutor’s decision to tell the grand jury their “sole interest [was] to ascertain the truth.” This language is improper in this supplemental instruction, and would be in any legal instruction given to any grand jury. The legal advisor cannot undermine the law by giving an instruction that contradicts the statutory mandates of CPL 190.60, 190.65 and 190.75, let alone act as an advocate by using prosecutorial language which has long been held to be “improper to argue” in a trial summation. (People v Smith, 184 AD2d 326, 326 [1st Dept 1992], citing People v Jackson, 174 AD2d 552, 554 [1st Dept 1991].)
This ill-advised, legally incorrect and blatantly coercive instruction tainted the balance of the grand jury deliberations and led to even more potential prejudice. Following this instruction, the grand jury voted to hear testimony already presented read back to them. However, the record shows they only voted to hear the testimony of a police witness, whose version of events would support an indictment. They did not vote to hear the defendant’s testimony read again. Of course, one can never know exactly why a majority voted to hear only this testimony. However, given the directive to deliberate to indict, it is understandable that a majority of the members of the panel could have believed that a read-back of evidence that would justify an indictment was all that was warranted. Moreover, the timing and manner in which this request was complied with invited further prejudice. When the request was made on December 18, 2013, the prosecutor interrupted the grand jury and told them to stop deliberating until they heard the requested testimony read back. Testimony was read back five days later, on December 23, 2013. There is no statutory time limit about when the prosecutor must present evidence requested by a grand jury; however, in this context, having chosen to encourage the grand jury to act like a petit jury, the prosecutor should have arranged for a simple read-back when the jurors who were all part of the group that requested it were still there. (Cf. People v Albanese, 45 AD3d 691, 692 [2d Dept 2007].) Even then, the testimony requested by the grand jury was not read back in its entirely, according to the grand jury minutes. This witness actually testified twice: once prior to defendant’s appearance, and then after the defendant testified. The minutes state that only the testimony the officer gave a week prior to the defendant’s testimony was read back, but not the lengthy testimony given afterwards. Although there are “less formal procedural require *816 ments” involved in responding to grand jury requests as compared with requests by a trial jury (People v Rosado, 212 AD2d 426, 427 [1st Dept 1995]), in this case the defendant was not only potentially prejudiced by the tardiness of the response, but also by the lack of a full and complete response to their request. (Cf. People v Lourido, 70 NY2d 428, 435 [1987].)*
In sum, the defendant was potentially prejudiced by the improper charge and its aftermath to the extent that the overall integrity of the grand jury proceeding was impaired. (CPL 210.35 [5]; 210.20 [1] [c]; see People v Fetcho, 173 Misc 2d 195, 196 [Sup Ct, Onondaga County 1997]; cf. Montanez, 90 NY2d at 694.) Thus, for the aforementioned reasons, the motion to dismiss the indictment is granted.
As the dismissal of the entire indictment is based on potential prejudice resulting from a coercive legal instruction, and not a defect that is of an “inherently fatal nature” (People v Gonzalez, 28 Misc 3d 941, 942-943 [Sup Ct, Bronx County 2010]), the court will authorize a re-presentation of the charges in an exercise of its discretion. (CPL 210.20 [4].)

 Following the incomplete read-back, the prosecutor immediately re-instructed the grand jury on the elements of the charges even though the grand jury had neither voted nor asked that these instructions be read again. While this instruction was legally accurate, nonetheless, at this point, the grand jurors heard the charge only against the backdrop of evidence that made no reference to testimony presented after the defendant testified, and which they had voted to hear again.