OPINION OF THE COURT
Ruth Moskowitz, J.
Defendant moves to dismiss the instant indictment on the ground that the Grand Jury proceeding was defective within the meaning of CPL 210.35 (CPL 210.20, subd 1, par [c]). Defendant is charged, in a two-count indictment, with manslaughter in the second degree and criminally negligent homicide.
At issue is whether it was proper for the prosecution to submit new charges to the Grand Jury investigating this matter after that body had voted “no true bill” on the only charge submitted.
Following the presentation to the Grand Jury of all of the evidence in this case, the Assistant District Attorney instructed the Grand Jury with respect to the charge of manslaughter in the first degree. He submitted no other *646 charges. The Grand Jury returned with a vote of “no true bill”. The prosecutor then spoke with the grand jurors and instructed them with respect to the charges of manslaughter in the second degree and criminally negligent homicide. That body returned an indictment on both those charges.

Applicable Law

CPL 210.35 provides, in pertinent part, that: “A grand jury proceeding is defective within the meaning of paragraph (c) of subdivision one of section 210.20 when: * * * 5. The proceeding otherwise fails to conform to the requirements of article one hundred ninety to such degree that the integrity thereof is impaired and prejudice to the defendant may result.”
Defendant contends that submission of the additional charges following the vote of “no true bill” impaired the integrity of the Grand Jury and prejudiced the defendant. Furthermore, he argues that the prosecutor should have sought judicial permission to resubmit the case to the Grand Jury.
CPL 190.75 (subd 1) provides: “If upon a charge that a designated person committed a crime, either (a) the evidence before the grand jury is not legally sufficient to establish that such person committed such crime or any other offense, or (b) the grand jury is not satisfied that there is reasonable cause to believe that such person committed such crime or any other offense, it must dismiss the charge. In such case, the grand jury must, through its foreman or acting foreman, file its finding of dismissal with the court by which it was impaneled.”
CPL 190.75 (subd 3) outlines the procedure that must be followed for resubmission of a case to a Grand Jury.
An important issue in this case is whether the Grand Jury’s vote of “no true bill” constituted a dismissal under CPL 190.75. The People argue that for a decision by a Grand Jury to constitute a dismissal, the finding of dismissal must be filed with the court, which did not happen here. Defendant contends that the matter was dismissed upon the failure of the Grand Jury to initially return a true *647 bill and if the prosecution wished to submit additional charges it would first need judicial permission.
The court finds that this matter was dismissed when the Grand Jury failed to return a true bill on the manslaughter in the first degree charge. Dismissal of a charge before a Grand Jury means that there has been a hearing by competent authority, examination of evidence and a conclusion reached which would not warrant submission of any question to a trial jury. To constitute a dismissal, some definite action must have been taken by a Grand Jury (People v Kelly, 140 Misc 377; People v Pack, 179 Misc 316). In the instant matter, the Grand Jury took definite action; it dismissed the charge of manslaughter in the first degree.
Under the People’s theory, a prosecutor could introduce new evidence, as well as submit new charges, to a Grand Jury that has voted no bill, so long as the foreman did not file a finding of dismissal. This would place undue importance on the filing requirement, over which the prosecutor, it can be argued, as legal advisor to the Grand Jury, has control. In addition, it would circumvent the requirement of CPL 190.75 (subd 3) (Code Grim Pro, § 270) and contravene the underlying reason for its adoption, i.e., to prevent an overzealous prosecutor from repeatedly submitting dismissed charges to a Grand Jury; repeated resubmission being contrary to the spirit of the criminal law (Denzer, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 190.75; People ex rel. Flinn v Barr, 259 NY 104). In other words, the People’s theory would permit a prosecutor to do indirectly that which the statute prohibits him to do directly — to resubmit charges to a Grand Jury without judicial permission. It is doubtful that the Legislature intended that by the simple subterfuge of failing to file a dismissal, the salutary purpose of the statute may be frustrated (People v De Lio, 75 Misc 2d 711, 713; see, also, Mooney v Cahn, 79 Misc 2d 703).
When a Grand Jury deliberates on the evidence presented and fails to return an indictment, that body is indicating that the evidence was either not legally sufficient to establish that the designated person committed the crime or that there was no reasonable cause to believe that such person committed such crime. Once such a determina *648 tion has been made it is not for the prosecutor to decide whether resubmission is appropriate.
Accordingly, it was error for the Assistant District Attorney to submit new charges without first obtaining judicial permission.
Furthermore, the additional instructions following the vote to dismiss constituted a procedural irregularity going to the very heart and integrity of the Grand Jury system. The case of People v Groh (57 AD2d 389)* is factually similar to the instant matter. In Groh, after a full presentation of the evidence, a charge on the law by the Special Prosecutor, and discussion of the evidence among the grand jurors themselves, they voted to dismiss the proposed charges. Thereafter, the Special Prosecutor, aware of the Grand Jury’s vote, re-entered the Grand Jury room and discussed the case with the grand jurors. The Special Prosecutor then suggested to the Grand Jury that the Justice presiding at the Extraordinary Special and Trial Term would be willing to provide them with a further charge on the law. Only three grand jurors voted to receive further instructions. Nevertheless, the Special Prosecutor and the Justice presiding at the Extraordinary Special and Trial Term appeared before the Grand Jury on a subsequent date and delivered a further charge. This was done despite the fact that the Grand Jury, as a body, had not requested such a charge. A second vote was then taken and that body returned a true bill.
The Appellate Division, Second Department, stated:
“Aside from the fact that we view these ‘further instructions’ to have been incorrect on the law, as they seemed to indicate to the grand jurors that they had no alternative except to indict, we believe that the methods employed, *649 although no doubt well motivated, were coercive in fact and, if permitted to go unchecked, would tend to destroy both the value and purpose of our Grand Jury system. That system, which has its origins in antiquity and enjoys no lesser protection than that afforded by the Federal and State Constitutions (US Const, 5th Arndt; NY Const, art I, § 6), performs a vital function in our jurisprudence — that of protecting the private citizen from unjust prosecution. As Mr. Justice Foster stated in Matter of Gardiner (31 Misc 364, 366-367, 375, cited with approval in People v Minet, 296 NY 315, 322):
“ ‘The grand jury had its origin at a time when there raged a fierce conflict between the rights of the subject and the power of the crown. It was established to secure to the subject a right of appeal to his peers, under the immunity of secrecy and irresponsibility, before the government could bring him to trial. It was a right wrung from the government to secure the subject against oppression. * * *
“ ‘[As] was rightly said by Judge King, in the case of Lloyd and Carpenter, 5 Penn. L.J. 62: “Grand juries are high public functionaries, * * * They are the great security to the citizen against vindictive persecutions, either by government, or by political partisians, or by private enemies. In their independent action, the persecuted have found the most fearless protectors; and in the records of their doings are to be discovered the noblest stands against the oppression of power, the virulence of malice, and the intemperance of prejudice.” * * *
“‘It is as important to a person that he be fairly and justly accused of crime as that he be fairly and impartially tried therefor’ (emphasis supplied).
“However, this historical function can only be carried out if the Grand Jury remains truly free and independent of outside influences. As was stated by Mr. Justice Callaghan in People v Both (118 Misc 414, 423): ‘The life and liberty of the individual depend largely upon the citizens who are called from all walks of life to act as jurors. They are in every instance the sole judges of the facts, and when called as grand jurors, they are the judges of the law as well as of the facts. The administration of the criminal law *650 lies largely with grand and petit juries. It is through the jury system alone that the people have a part in the administration of the law. It is important, therefore, that no undue influence or coercion be exerted at any stage of a prosecution to influence unduly the judgment of a juror.’ (See, also, People v Cunningham, NYLJ, April 28, 1977, p 10, col 4; People v Benin, 186 Misc 548; United States v Rintelen, 235 F 787.)
* * *
“To sanction such a procedure, no matter how well intentioned it may have been in this case, would permit prosecutors in the future to coerce or badger grand jurors to change their solemnly arrived at determinations.” (People v Groh, supra, at pp 392-393.)
In the instant matter, after the Grand Jury failed to indict, the Assistant District Attorney re-entered the Grand Jury room and spoke with the jurors. He asked them if they wanted further instructions and claims that they did.
There was no indication in the Grand Jury minutes how the Assistant District Attorney determined that it was the Grand Jury’s wish that additional charges be submitted to them. There is some evidence that he may have made such a determination from a single question posed by a single juror. Clearly this was not the case in which the Grand Jury voted to reconsider the charges sua sponte (People v Groh, supra, at p 393). Nor is there a scintilla of evidence that this was the desire of the entire or a majority of the grand jurors.
These further instructions may have indicated to the grand jurors that they had no alternative except to indict on the new charges. The additional charges may have coerced the jurors to return a true bill. This was clearly improper and could have been avoided had the Assistant District Attorney charged all three crimes at the same time. The integrity of the Grand Jury was impaired by this conduct and the defendant may have been prejudiced therefrom.
For the foregoing reasons, it was improper for the prosecutor to submit the additional charges to the Grand *651 Jury. The conduct in question resulted in a defective Grand Jury proceeding.
Accordingly, the instant indictment is dismissed (CPL 210.20, subd 1, par [c]).
Leave to resubmit this matter to a new Grand Jury is granted (CPL 210.20, subd 4).
The court his two suggestions upon the resubmission of this case to a Grand Jury. During the initial presentation, one of the witnesses indicated that she wanted to offer a statement to the Grand Jury. As a precautionary measure, the Assistant District Attorney escorted that witness outside the presence of the Grand Jury to determine whether the witness’ statement was admissible evidence. At that point, the witness was unable to remember her statement. The prosecutor should have made an effort to refresh the witness’ recollection. The witness’ request came at a crucial part of the proceeding where she was called upon to describe the alleged criminal activity. The grand jurors indicated an interest in learning what the witness had to offer. If this should occur again the Assistant District Attorney should make every effort to refresh the witness’ recollection.
In addition, there has been some suggestion that there were eyewitnesses who were not asked to testify in the Grand Jury and whose account of the incident in question differs significantly from the one heard by the Grand Jury. If this is true, then upon resubmission the prosecutor should call all known eyewitnesses.

 In People v Groh, defendant-petitioner first moved in the Extraordinary Special and Trial Term for an order dismissing the indictment filed against him by the Extraordinary Special Grand Jury for the County of Queens. The motion was denied. Defendant-petitioner then renewed his motion, pursuant to subdivision 2 of section 149 of the Judiciary Law, before the Second Department. The Appellate Division denied the motion on the ground that a motion to that court pursuant to subdivision 2 of section 149 was an alternative to proceeding before the Extraordinary Special and Trial Term and, having elected to proceed before the Special Term in the first instance, defendant-petitioner was precluded from attempting to overturn the lower court decision by a de novo application to the appellate court. The Appellate Division went on to state that had the motion been submitted to it ab initio, it would have granted the application for the reasons stated in the body of the instant opinion.