**Charles ANDREANOFF, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–1480.

Court of Appeals of Alaska.

Nov. 27, 1987.

Donald L. Surgeon, Asst. Public Defender, Bethel, and Dana Fabe, Public Defender, Anchorage, for appellant.

Valerie A. Van Brocklin, Asst. Dist. Atty., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

In this appeal, we are asked to decide two questions regarding the proper interpretation of AS 12.40.080. First, may a grand jury, *sua sponte*, reconsider a decision to return a "no true bill" and hear new evidence? And, second, if it may, was its decision to do so in this case coerced by the prosecution?

On June 21, 1985, a grand jury was convened to consider a proposed indictment charging Charles Andreanoff with a single count of first-degree murder in violation of AS 11.41.100(a)(1). The prosecutor read the proposed indictment, instructed the grand jury on the applicable law, presented the testimony of four witnesses, and submitted the case. The grand jury then retired and began its deliberations. After the grand jury had deliberated for a time, the following transpired between the grand jury and the prosecutor:

MR. SCHULER: Okay, back on record. Madam Foreman, have you reached a verdict?

THE FOREPERSON: We have.

MR. SCHULER: And what is your verdict?

THE FOREPERSON: No true bill.

MR. SCHULER: Is that the grand jury's decision?

THE FOREPERSON: It is.

MR. SCHULER: Did the grand jury want to inquire into lesser includeds?

A GRAND JUROR: Does that mean ask for more information?

MR. SCHULER: Yes, I just want to clarify. Well either ask for more information or a different charge at a lower degree. The grand jury can do either of those things.

A GRAND JUROR: Oh, I think....

A GRAND JUROR: We don't feel that the charge has been substantiated. Trooper Beldon did not interview Charles [Andreanoff] personally. There was no confession, no admission of guilt.

MR. SCHULER: There is other evidence in existence, if the grand jury wants to inquire into that.

A GRAND JUROR: Yeah. We—we need more evidence in order to....

THE FOREPERSON: We need more ...

MR. SCHULER: I just wanted to clarify what the grand jury intended.

THE FOREPERSON: We need more evidence.

A GRAND JUROR: Yes.

MR. SCHULER: All right. We can call other witnesses and on that it would have to be continued over for two weeks for the next grand jury session—if that's the grand jury's wish. Is it?

A GRAND JUROR: Yes.

THE FOREPERSON: Yes.

A GRAND JUROR: Well we're here to see justice, you know. And if the man is guilty we want to turn him over, but if he's not guilty, or if there's doubt, we're not going to render a true bill.

MR. SCHULER: I understand. There are other witnesses that the grand jury could call.

A GRAND JUROR: Yes.

MR. SCHULER: And we can bring them in. There is other evidence, if—if the grand jury wants to hear it.

A GRAND JUROR: Yeah, we want to hear all the evidence.

MR. SCHULER: All right. What I suggest then is, I'll let the grand jury deliberate on whether it wishes to call additional witnesses on—on its own. If you decide you would like to hear more evidence, then we can call it—continue this case over to the next one.

A GRAND JUROR: Yeah, that suits me fine.

MR. SCHULER: Okay. Well then you talk about that, about whether that's what the grand jury wants to do and we'll be right back.

The grand jury then retired and continued its deliberations, after which the following transpired:

MR. SCHULER: Back on the record. Madam Foreman, there was a question that came up before about the grand jury's intentions, what it wishes. Has the grand jury reached a decision on that?

THE FOREPERSON: It has.

MR. SCHULER: All right. And what is your decision?

THE FOREPERSON: The grand jury would like to have more evidence presented in this case.

The grand jury reconvened on July 5, 1985. Two additional witnesses testified, as well as two of the four witnesses who had testified on June 21, 1985. The grand jury then deliberated and returned a true bill charging Andreanoff with first-degree murder.

In Andreanoff's view, the foregoing requires dismissal of the indictment. Andreanoff argued to the trial court that the prosecutor improperly coerced and pressured the grand jurors to return a true bill in violation of AS 12.40.080 and Alaska Rule of Criminal Procedure 6(n). He further claimed that he was denied his right to

a fair and impartial grand jury under the state and federal constitutions. The trial court disagreed and concluded that the grand jury's initial indication of a "no true bill" was provisional and not a final decision. In the trial judge's view, the grand jury, *sua sponte*, elected to hear additional evidence and postponed a final decision until after that evidence was heard. Consequently, the trial court ruled that the prosecutor had not coerced the grand jury and denied Andreanoff's motion to dismiss the indictment. Andreanoff was convicted after a jury trial, and he appeals. We affirm.

Alaska Statute 12.40.080 provides that "[w]hen a grand jury does not return an indictment, the charge is dismissed, and it may not be again submitted to or inquired into by the grand jury unless the court so orders." [1] Also relevant is Alaska Rule of Criminal Procedure 6(n), which provides in pertinent part:

An indictment may be found only upon the concurrence of the majority of the total number of jurors. If the defendant has been held to answer and a majority of jurors do not concur in finding "a true bill," the indictment shall be endorsed "not a true bill" and signed by the foreman. Whenever an indictment is found, it shall be endorsed "a true bill" and

signed by the foreman. Such indictments, whichever way endorsed, shall be presented in open court and filed with the clerk where they shall remain public records.

Finally, Alaska Rule of Criminal Procedure 7(c) provides in pertinent part, "[n]o indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected by reason of a defect or imperfection in matter of form in the indictment, which does not tend to prejudice the substantial rights of the defendant."

■ In this case, the trial court relied in part upon *United States v. Thompson*, 251 U.S. 407, 40 S.Ct. 289, 64 L.Ed. 333 (1920) and *United States v. McKenzie*, 678 F.2d 629 (5th Cir.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982), in determining that no substantial rights of Andreanoff had been violated. Andreanoff correctly points out that these federal authorities are inapposite because there is no similar federal statute or rule which requires judicial approval before reconsideration of a case by the same grand jury or resubmission of a case to a second grand jury after the grand jury fails to return an indictment. Andreanoff argues that AS 12.40.080 is derived from an Oregon statute [2] which substantially limits the power

---

1. It is possible that this statute infringes on the supreme court's rule making power or conflicts with Alaska R.Crim.P. 6. *See* Alaska Const. art. IV, § 15; *Leege v. Martin*, 379 P.2d 447 (Alaska 1963). The parties have not briefed these issues, and we express no opinion.

2. Congress established codes of criminal law and procedure for Alaska in 1899. In large part, the territorial law of Alaska was derived from the law of Oregon, and the laws of Oregon were derived from the laws of New York. Brown, *The Sources of the Alaska and Oregon Codes, Part I: New York and Oregon*, 2 U.C.L.A.–Alaska L.Rev. 15 (1972), *Part II: The Codes and Alaska, 1867–1901*, 2 U.C.L.A.–Alaska L.Rev. 87 (1973). The Alaska Code of Criminal Procedure was in essence the criminal procedure code drafted by the Field Commission for New York. Brown, *Part II*, at 94 n. 35, 97, 101–02. AS 12.40.080 was originally enacted as §§ 33 and 34, pt. II Carter's Annotated Alaska Code (1900), which provided:

Sec. 33. *Proceeding when indictment not found "a true bill."* That when a person has been held to answer a criminal charge, and the indictment in relation thereto is not found

"a true bill," as provided in section twenty-nine of this Title, it must be endorsed "not a true bill," which endorsement must be signed by the foreman, and presented to the court and filed with the clerk, and remain a public record; but in the case of an indictment not found "a true bill" against a person not so held, the same, together with the minutes of the evidence in relation thereto, must be destroyed by the grand jury.

Or.Laws, Oct. 19, 1864; Hill's Ann.Laws, § 1263.

Sec. 34. *Indictment, effect of when returned "not a true bill."* That when an indictment endorsed "not a true bill" has been presented in court and filed, the effect thereof is to dismiss the charge; and the same can not be again submitted to or inquired of by the grand jury, unless the court so order[s].

Or.Laws, Oct. 19, 1864; Hill's Ann.Laws, § 1264.

These statutes were derived, respectively, from Or.Laws, Oct. 19, 1864; Hill's Ann.Laws §§ 1263 and 1264. *See State v. Turner*, 104 Or. 334, 207 P. 602, 603 (1922) (setting out the identical Oregon statutes).

of the prosecutor to resubmit a rejected indictment. *See State v. Turner*, 104 Or. 334, 207 P. 602, 603 (1922).[3] A similar New York statute has also received a restrictive interpretation. *See People v. Wilkins*, 68 N.Y.2d 269, 508 N.Y.S.2d 893, 501 N.E.2d 542 (1986); *People v. Davis*, 114 Misc.2d 645, 452 N.Y.S.2d 169 (1982); *People v. Groh*, 57 A.D.2d 389, 395 N.Y.S.2d 212 (1977).[4]

■ We do not understand our statute to prevent a grand jury from, *sua sponte*, reconsidering a matter after voting "not a true bill," so long as the reconsideration takes place prior to the foreperson's endorsing the indictment "not a true bill" and signing it. In the trial court, Andreanoff did not argue that *sua sponte* reconsideration was precluded.[5] In the absence of prosecutorial coercion, a matter which we will address hereafter, we see no reason not to permit grand jury reconsideration. We also believe that in order to perform its function, a grand jury must be permitted to inquire about additional evidence, (including other possible witnesses) and if such evidence exists, direct that it be presented.[6]

■ We share Andreanoff's concern that prosecutors should not violate the spirit or the letter of the statute in question. We agree with the trial court, however, that the prosecutor did not violate AS 12.40.080. Before the prosecutor's duty to refer a case to the superior court prior to resubmission or reconsideration arises, the grand jury must fail to return an indictment and the charge must first be dismissed. Ordinarily, presenting an indictment signed and endorsed "not a true bill" will have the legal effect of dismissing the charge. Perhaps other actions by the grand jury should trigger a duty in the prosecutor to obtain court approval before resubmitting a matter to the grand jury. At the very least the foreperson must endorse the indictment

**3.** If an Oregon statute had been construed by the Supreme Court of Oregon prior to its adoption by Congress as a law of Alaska, the Oregon court's construction of the statute would be presumed to have been adopted with the statute. *City of Fairbanks v. Schaible*, 375 P.2d 201, 207 (Alaska 1962), *rev'd on other grounds sub nom, Scheele v. City of Anchorage*, 385 P.2d 582, 583 (Alaska 1963). This rule is of limited importance because our statute was adopted in 1900 and *Turner* was decided in 1922. *See Ybarra v. State*, 97 Nev. 247, 628 P.2d 297 (1981); *Gee v. Pima County*, 126 Ariz. 116, 612 P.2d 1079 (App. 1980); *cf. Carver v. Gilbert*, 387 P.2d 928, 930–31 (Alaska 1963). In any event, the presumption is not conclusive and Alaska's courts may adopt a variant interpretation if convinced that the plain language of the statute, common sense, and public policy require it. *See, e.g., Beckley v. State*, 443 P.2d 51, 55–56 (Alaska 1968), 2A N. Singer, *Sutherland Stat. Const.* § 52.02 (4th Ed. 1984), and *cf. Pan Am Petroleum Corp. v. Shell Oil Co.*, 455 P.2d 12, 21 & n. 36 (Alaska 1969) (rejecting the California Supreme Court's earlier construction of a section in its Administrative Procedure Act upon which our Administrative Procedure Act is based).

**4.** The current New York law is found in N.Y. CPL § 190.75 which provides in relevant part:

*Grand jury: dismissal of charge*

1. If upon a charge that a designated person committed a crime, either (a) the evidence before the grand jury is not legally sufficient to establish that such person committed such crime or any other offense, or (b) the grand jury is not satisfied that there is reasonable cause to believe that such person committed such crime or any other offense, it must dismiss the charge. In such case, the grand jury must, through its foreman or acting foreman, file its finding of dismissal with the court by which it was impaneled.

. . . .

3. When a charge has been so dismissed, it may not again be submitted to a grand jury unless the court in its discretion authorizes or directs the people to resubmit such charge to the same or another grand jury. If in such case the charge is again dismissed, it may not again be submitted to a grand jury.

**5.** On appeal, Andreanoff argues that AS 12.40.-080 precludes grand jury reconsideration of a case, even *sua sponte* reconsideration, after the foreperson announces to the prosecutor a "no true bill" vote by the grand jury. He relies on *Turner*, 207 P. at 604. In Andreanoff's view, once the grand jury completes its deliberations, takes a vote on a submission which results in a negative majority vote, *i.e.*, a "no true bill," calls in the district attorney, and through its foreperson informs her of the grand jury's action, the grand jury may not give further consideration to the case. *See Davis*, 452 N.Y.S.2d at 170.

**6.** Alaska R.Crim.P. 6(q) permits the grand jury to order the production of evidence which it believes might "explain away the charge," *i.e.*, exculpatory evidence. We do not view this provision as a limitation on the grand jury's power to request the production of additional inculpatory evidence of which it learns in the course of its proceedings.

"not a true bill" and sign it. *People v. Stecker,* 141 Misc. 417, 252 N.Y.S. 187 (N.Y.Gen.Sess.Ct.1931). *See Groh,* 395 N.Y.S.2d at 215. In this case the foreperson never did this. Clearly, the prosecutor cannot prevent the foreperson from endorsing the indictment "not a true bill." Evidence that the prosecutor interfered with the foreperson might, in an appropriate case, warrant dismissal of an indictment.

In the instant case, however, it does not appear that the prosecutor's inquiries regarding possible lesser-included offenses were inappropriate. *Compare Castillo v. State,* 614 P.2d 756, 763 & n. 11 (Alaska 1980) (recognizing without apparent criticism the practice of referring proposed indictments on lesser-included offenses after the grand jury has returned a "no true bill" on the original proposed indictment) *with Davis,* 452 N.Y.S.2d at 172 (criticizing this practice). Once this inquiry was made, it became clear that the entire grand jury was interested in considering additional evidence and postponing its ultimate decision until that evidence was received.[7]

In our view, whether prosecutorial coercion of a grand jury is present is a question of fact. Here the trial court had a transcript of everything that transpired between the prosecutor and the grand jury.

There is no indication in the transcript that the prosecutor expressly or impliedly criticized the grand jury for its initial action, and a grand juror, rather than the prosecutor, broached the subject of additional evidence. The prosecutor left the room and the grand jury privately discussed a possible continuance and apparently unanimously agreed to hear more evidence. The trial court's conclusion that the grand jury was not coerced, and in fact, *sua sponte,* decided to hear further evidence, is therefore not clearly erroneous. *Esmailka v. State,* 740 P.2d 466, 468–69, (Alaska App.1987). Under the circumstances, the trial court did not abuse its discretion in denying the motion to dismiss the indictment. In a case like this, requiring court intervention before permitting a grand jury to consider further evidence would be to exalt form over substance and cause unnecessary delay without any corresponding benefit to the defendant or the community.

The judgment of the superior court is AFFIRMED.

7. We do not consider our decision to be inconsistent with *People v. Wilkins,* 68 N.Y.2d 269, 508 N.Y.S.2d 893, 501 N.E.2d 542 (1986). In *Wilkins,* the court considered whether some action, short of a negative vote by a grand jury, could constitute a "dismissal" of the indictment, *i.e.,* in Alaska's terminology, "failure to return an indictment" or return of "not a true bill." The majority in *Wilkins* concluded that the prosecutor's unilateral withdrawal of the case after presentation of evidence constituted, in legal effect, "a dismissal." The prosecutor, in apparent good faith, withdrew a case from the grand jury because certain witnesses were missing. The prosecutor did not request grand jury approval to extend its term to permit an expanded submission at a later time. 508 N.Y.S.2d at 896, 501 N.E.2d at 545. In this case, the grand jury unanimously agreed to continue the case in order to permit additional testimony. It appears that the New York Court of Appeals would sanction such an activity by the grand jury without concluding that a dismissal had occurred.