OPINION OF THE COURT
Joseph Fisch, J.
Pursuant to defendants’ omnibus motions to inspect the Grand Jury minutes and dismiss the indictment pursuant to CPL 210.20 and 210.30, this court discovered highly questionable activity in the People’s Grand Jury presentation. Accordingly, by interim decision dated February 10, 1999, the court raised a number of factual questions and legal issues regarding the propriety of the said proceedings, which required explanation. The court, pursuant to CPL 190.25 (4) and its discretionary powers, ordered the release to the defense of such portions of said minutes, dated September 1, 3, and 8, 1998, containing the prosecutor’s legal instructions and statements recording action taken,* and directed the prosecutor to submit to the court and defense an affirmation responding to listed questions concerning Bronx Grand Jury practices and the instant presentation. The court then had counsel submit *672 memoranda of law addressing the motions to dismiss, based upon the interim decision and the prosecutor’s affirmation.
PACTS
The defendants are currently under indictment for four counts of attempted murder in the second degree and related charges, stemming out of an incident on August 25, 1998 where defendants allegedly engaged in assaultive conduct toward five individuals. The charges were presented to the same Grand Jury under primarily an acting in concert theory, resulting in the instant indictment.
Defendant Bobby Harris
The Grand Jury minutes reflect that on September 1, 1998, after a full presentation of the evidence, the prosecutor instructed the Grand Jury on accomplice liability and 11 criminal charges, i.e., four counts of attempted murder in the second degree, five counts of assault in the second degree, and one count each of assault in the third degree and criminal possession of a weapon in the fourth degree, regarding Harris. The minutes reflect that the Grand Jury requested recharging on accomplice liability, as well as assault in the second degree with a weapon, and assault in the third degree without a weapon, as to one complainant. The minutes reflect that on September 1, after this requested recharging and deliberations, the prosecutor recorded a true bill voted only on the assault in the third degree (a misdemeanor charge). It would appear, therefore, that the Grand Jury elected not -to vote an indictment against Harris on any of the felony charges. However, on September 3, 1998, the minutes reflect the prosecutor recording — with no explanation — that the Grand Jury now voted to dismiss the misdemeanor assault charge and, instead, true bill the 10 previously requested charges. The minutes are devoid of any explanation for this reversal of its vote.
Defendant Amanda Nieves
On September 8, 1998, after charging the Grand Jury in regard to Nieves, the minutes do not reflect the prosecutor recording Grand Jury action taken.
The Court’s Action
Because of these startling events, the court found it necessary to examine the Grand Jury panel’s minute book entries *673 for September 1, 3, and 8, 1998 in an effort to ascertain what had occurred on those dates. Each Grand Jury minute book page contains four categories: (1) the date, Grand Jury number, and name(s) of the defendant(s); (2) the offense(s); (3) witnesses examined; and (4) action, offering four options — bill ordered, dismissed, transferred to Criminal Court, and adjourned.
The Grand Jury minute book entry for September 1, 1998, under “offense”, lists only one count of attempted murder in the second degree as well as two counts of assault in the second degree, one count of assault in the third degree {the only charge true billed according to the record made by the prosecutor), and criminal possession of a weapon in the fourth degree. In the column “action”, was stamped “true bill” (not corresponding to any particular charges) above Bobby Harris. It is thus impossible to determine which of the charges, if any, the stamped “true bill” refers to.
The entry for September 3, 1998, under “offense”, lists only one count of attempted murder in the second degree as well as two counts of the incorrect subdivision of assault in the second degree (Penal Law § 120.05 [1]), one count of assault in the third degree {dismissed according to the record made by the prosecutor), and criminal possession of a weapon in the fourth degree. Under “action”, was stamped “true bill” over the name of Bobby Harris with a notation “re-open”. Once again, the “true bill” notation does not correspond to any particular charges.
The entry for September 8, 1998, lists under “offense” one count each of attempted murder in the second degree, assault in the second degree, and criminal possession of a weapon in the fourth degree; and under “action”, was stamped “true bill” over A. Nieves.
The court inspection of the relevant entries, inconsistent with the minutes recording Grand Jury action and the instant indictment, demonstrates the impossibility of determining which of the specific charges were actually true billed or dismissed on these dates.
The Prosecutor’s Explanation of September 1 and September 3 Grand Jury Action
In response to the court’s questions as to when, how and why the Grand Jury changed its initial decision of September 1, 1998 wherein they only true billed the assault in the third degree charge against defendant Harris, the assigned prosecutor’s affirmation states: “On September 1st, the Grand Jury *674 informed me that they voted a true bill as to the misdemeanor assault charge. I asked them if this meant that they had dismissed all of the other charges they had been asked to consider. In response to my question some of the Grand Jurors shouted out that they had dismissed the other charges while others announced in sum and substance that they had also voted yes on acting in concert. When I inquired as to what this meant it became clear that many of the Grand Jurors thought ‘acting in concert’ was a crime in itself and not a theory of legal liability. When it was explained to them that this was not the case, some members of the Panel voiced their wish to continue deliberations and vote again while others responded to those who voiced this position that they considered the vote as being final. This debate among the Grand Jurors was extremely passionate, with members of the Panel walking out, yelling at each other and, in my opinion, capable of physical violence. The foreman of the Panel quieted the situation down somewhat by smashing his cane on a table. He then informed me that the Panel wished to continue deliberations when the Panel next met on September 3rd and vote again at that time. At this point one of the members of the Panel began arguing with him and the foreman threatened to resign. The Panel then adjourned until September 3, 1998.” (Affirmation, at 4 [emphasis added].)
It is clear from this admission that the prosecutor was physically present in the chamber during this “passionate” debate and participating in the discussion!
In response to the court’s question as to whether the People sought leave to resubmit the felony charges, the prosecutor, in his affirmation, states: “Leave was not sought from the Court to resubmit the felony charges since the Grand Jury, though its foreman, informed me that it wished to continue to deliberate.” (Affirmation, at 5 [emphasis added].) “The Grand Jury was not recharged as to the law, since there was no such request from the Grand Jury.” (Affirmation, at 5 [emphasis added].) “Immediately prior to their continued deliberations and vote on September 3rd, I checked with the Panel to further discuss the meaning of ‘acting in concert’ with them, specifically that it is not a charge for them to vote on but rather a legal instruction to assist them in considering the pertinent charges, and to see if they still wished to engage in further deliberations. They informed me that they intended further deliberations. I left the Grand Jury chamber so that they could engage in that process.” (Affirmation, at 5 [emphasis added].)
*675 Once again, on September 3, the prosecutor is not merely the one presenting the case but a participant in the discussions, inside the chambers.
In this regard, in response to the court’s specific question in its interim decision as to whether the prosecutor had engaged in any “off the record” conversations-with the Grand Jury, the prosecutor admits he: “engaged in a conversation with the Grand Jury Panel on September 1st in an attempt to discover what they meant when they informed [him] in sum and substance that they also voted yes on acting in concert, and to determine after they concluded their arguments what action if any they wished to take.” (Affirmation, at 6 [emphasis added].) He further admits on September 3, 1998 he “entered the Grand Jury chamber to further discuss ‘acting in concert’ * * * and to find out if their decision of September 1st to continue to deliberate was still their decision on the morning of September 3rd.” (Affirmation, at 6 [emphasis added].)
Grand Jury Practices in General
In response to the court’s posed questions concerning the recording of Grand Jury action, the prosecutor’s affirmation states: “a worksheet is filled out by the assigned Assistant upon which the charges to be submitted and the legal instructions to be given to the Grand Jurors are listed. This is not an official document, but a check list to which the Assistant can refer while before the Grand Jury in order to ensure that all that should be read to the Panel is read. Since the worksheet is nothing more than a set of notes for the Assistant to use, what is written on it after a vote, if anything, is up to the individual Assistant.” (Affirmation, at 7.) “Grand Jury action is not routinely memorialized on the record by either the prosecutor or the foreman.” (Affirmation, at 8.) It was memorialized in defendant Harris’ case “only because of the unusual nature of the Grand Jury action.” (Affirmation, at 7.) “[T]he District Attorney’s Office does not make any such contemporaneous record (or documentation with the vote).” (Affirmation, at 8.)
In response to the court’s questions regarding how the District Attorney regards the Grand Jury’s failure to true bill certain charges, the prosecutor states: “If the People are informed by the Grand Jury foreperson that certain charges have been voted, and the People make no further inquiry or are told upon such inquiry that at least twelve Grand Jurors voted to dismiss other charges the People regard these charges as dismissed. If the People are informed that a decision cannot *676 be reached on any or all of the charges, or are informed that twelve Grand Jurors did not vote either way the People regard this as no Grand Jury action being taken, pursuant to CPL § 190.25(1).” (Affirmation, at 8.)
ISSUES PRESENTED
1. Whether the Grand Jury, after presentation of all evidence and the prosecutor’s repeated legal instructions on September 1, 1998, “considered” the felony charges against defendant Harris, and dismissed them, either by so advising the prosecutor, or, in effect, by failing to true bill any felony charges, but by voting to true bill only the misdemeanor assault charge.
2. Whether the Grand Jury on September 3, 1998 “sua sponte” reconsidered their initial vote of September 1, 1998, when they now true billed the one misdemeanor and nine felony charges (previously charged and not true billed) and dismissed the misdemeanor assault charge (previously true billed); or whether the Grand Jury action recorded on September 3, 1998 was a result of prosecutorial overreaching.
3. Whether the integrity of the Grand Jury proceedings was impaired risking prejudice to defendants Harris and/or Nieves, thereby warranting dismissal of the indictment pursuant to CPL 210.20 (1) (c) and 210.35 (5).
CONCLUSIONS OF LAW
The first issue is whether the Grand Jury, after presentation of all evidence and the prosecutor’s repeated legal instructions on September 1, 1998, “considered” the felony charges against defendant Harris, and, dismissed them, either (a) by so advising the prosecutor, or, in effect, (b) by failing to true bill any felony charges, but by voting to true bill only the misdemeanor assault charge. This court holds that the felony charges were in fact “considered” and effectively dismissed by the Grand Jury’s failure to true bill any felony charges.
The prosecutor concedes that on September 1, 1998, after he was informed that the Grand Jury voted to true bill the misdemeanor assault charge, he inquired whether this meant that the panel had dismissed the other charges. In response, some jurors shouted out that they had dismissed the other charges. Even after the prosecutor again explained “acting in concert” because some jurors indicated they voted “yes” on it and thereafter wanted to continue to deliberate, other jurors still declared that their vote was final. This exchange with the *677 prosecutor, as well as the passionate debate described, with members yelling and walking out, clearly indicates that the panel, as a body, “considered” the charges, and a vote was taken which obviously failed to muster the necessary 12 votes to true bill the felony charges. However, under these circumstances, the court cannot conclude that 12 members concurred to dismiss the charges either, pursuant to CPL 190.25 (1).
When a Grand Jury deliberates and fails to return a true bill on particular charges, that body is indicating that the evidence is either legally insufficient or the wrong person is charged. Furthermore, the failure to return a true bill constitutes a dismissal when there has been a hearing by competent authority, an examination of the evidence, and a conclusion reached which would not warrant submission of the question to a trial jury. (People v Davis, 114 Misc 2d 645 [Sup Ct, Kings County 1982].) A failure to vote a true bill is a rejection of the People’s evidence and equivalent to a dismissal, requiring leave of the court for resubmission pursuant to CPL 190.75 (3). (People v Cade, 74 NY2d 410 [1989]; People v Wilkins, 68 NY2d 269 [1986]; People v Wesley, 161 Misc 2d 786 [Sup Ct, Kings County 1994].) Notwithstanding some jurors voting “yes” on “acting in concert”, several jurors stated that the other charges were actually dismissed and their vote was final. Therefore, this court holds that the Grand Jury, in effect, dismissed the felony charges by failing to true bill them when they, after serious consideration, true billed the assault in the third degree.
Under CPL 190.75 (3) “[w]hen a charge has been so dismissed, it may not again be submitted to a grand jury unless the court in its discretion authorizes or directs the people to resubmit such charge to the same or another grand jury.” Here, leave of court was not sought; and given the circumstances of this proceeding, the People would be required to discuss such circumstances with the empaneling court and seek leave for resubmission.
The prosecutor, however, claims the Grand Jury, through its foreman, informed him that they wished to continue to deliberate on the next business day, September 3, regarding the charges against Harris. The prosecutor was apparently improperly in the chamber engaging in conversation with grand jurors as to their deliberations and decisions. It was not until after the prosecutor inquired as to the status of other charges not true billed, and after explaining accomplice liability for a third time, that a few jurors indicated a desire to continue deliberations. During a passionate debate where *678 conflicting opinions were voiced, the prosecutor witnessed the foreman smash his cane on the table and inform him that the Grand Jury wished to continue deliberations.
There is not a scintilla of evidence that the Grand Jury, as a body, wished to continue deliberations. No vote was requested nor taken on September 1 or 3 as to whether they wished to continue deliberations. The foreperson, unilaterally, or even a few jurors, cannot force continued deliberations when 12 members, the minimum required pursuant to CPL 190.25 (1), have failed to concur on any particular charges considered. CPL 190.25 (1) requires 16 members be present for a quorum, and the finding of an indictment and “every other affirmative official action or decision requires the concurrence of at least twelve members thereof.” Therefore, this court holds that the Grand Jury, as a body, must have the concurrence of at least 12 members during a vote to determine whether they wish to continue deliberations on any particular case or charge, after the prosecution has completed its case and given all instructions. To hold otherwise would clearly be imprudent for the orderly disposition of Grand Jury matters. (See, People v Groh, 57 AD2d 389 [2d Dept 1977] [where three members voting to be recharged on the law was insufficient as a request for the Grand Jury to receive additional instructions].)
The second issue is whether the Grand Jury on September 3 “sua sponte” reconsidered their initial vote of September 1 when they true billed the one misdemeanor and nine felony charges (previously charged and not true billed) and dismissed the misdemeanor assault charge (previously true billed); or whether the Grand Jury action recorded on September 3 was a result of prosecutorial overreaching. This court holds the Grand Jury action recorded on September 3 was a reconsideration as the result of prosecutorial overreaching.
A Grand Jury cannot reconsider its vote of no true bill under circumstances that incontrovertibly indicate prosecutorial involvement in the Grand Jury deliberative process. A Grand Jury may only reconsider a dismissal which has not been filed so long as it is truly sua sponte, i.e., when the prosecutor does not unilaterally intervene in the proceedings in a manner which causes or contributes to their decision to reconsider their action. (People v Montanez, 90 NY2d 690 [1997]; People v Smith, 159 Misc 2d 77 [Sup Ct, NY County 1993].) The Court of Appeals, in Montanez, held there was prosecutorial overreaching impairing the integrity of the proceedings to the defendant’s prejudice warranting dismissal of the indictment, where the *679 prosecutor shook his head in the Grand Jury chamber upon reading their vote sheet which indicated a dismissal of all felony charges and only a true bill of the misdemeanor assault charge.
Here, the Grand Jury’s reconsideration was clearly not sua sponte, but the result of prosecutorial overreaching. The prosecutor’s affirmation demonstrates that he unilaterally intervened in the proceedings in a manner which caused or contributed to the Grand Jury’s decision to reconsider their action by (1) entering the chamber and engaging in an “off the record” conversation with grand jurors about their vote, (2) specifically inquiring as to the other 10 charges not true billed, including four counts of attempted murder, after he was initially informed that they only true billed the misdemeanor assault charge, all of which occurred after his second charge, at their request, on accomplice liability, assault in the second degree and assault in the third degree as to one complainant, (3) discussing “acting in concert” for the third time, now “off the record”, and (4) discussing their deliberative process while witnessing the ensuing passionate debate.
When Grand Jury reconsideration is not sua sponte, but the result of prosecutorial intervention in its deliberations, CPL 190.75 (3) mandating leave of the court for resubmission comes into play. (People v Montanez, 90 NY2d 690 [1997], supra.) Therefore, upon learning that the Grand Jury only voted to true bill the misdemeanor assault charge and then inquiring into and discussing their deliberations and vote, this court holds that the prosecutor was required to seek leave of the court to resubmit the charges to the same or another Grand Jury. Here, the prosecutor concedes no leave was sought.
The final issue is whether the integrity of the Grand Jury proceedings was impaired risking prejudice to defendants Harris and/or Nieves, thereby warranting dismissal of the indictment pursuant to CPL 210.20 (1) (c) and 210.35 (5). This court holds the integrity of the proceedings was impaired, risking prejudice to both defendants, to such a degree that dismissal of the indictment is mandated.
Under the circumstances discussed herein, the failure of the prosecutor to seek leave of the court pursuant to CPL 190.75 (3) to resubmit the charges originally not true billed, which were only reconsidered as a result of prosecutorial overreaching, both impaired the integrity and created the risk of prejudice to both defendants. (People v Montanez, 90 NY2d 690 [1997], supra.)
*680 Even assuming arguendo that the Grand Jury had not dismissed the felony charges on September 1, or, if dismissed, sua sponte reconsidered its decision on September 3, there are additional irregularities impairing the integrity of this proceeding. These irregularities are the result of the failure of the District Attorney: (1) to instruct the Grand Jury on who may vote and to demonstrate that 12 members present heard all of the evidence in the case before the vote on September 3 against defendant Harris; (2) to request a vote as to whether the Grand Jury needed additional instructions on accomplice liability on September 1 and 3, and, if so, then to completely recharge thereon; (3) to record his legal instructions, however minimal, on accomplice liability; and (4) to record each and every communication with the Grand Jury concerning legal instructions and their decisions.
Although the prosecutor took a quorum count on September 3, he failed to instruct the Grand Jury as to who may vote and to demonstrate on the record that 12 members present heard all of the evidence, as recorded on September 1 and 8. A Grand Jury proceeding is defective when fewer than 12 grand jurors concur in the finding of the indictment. (CPL 210.35 [3]; People v Collier, 72 NY2d 298 [1988]; People v Clemente, NYLJ, Feb. 24, 1989, at 24, col 4 [Sup Ct, Bronx County 1989]; People v Colebut, 86 Misc 2d 729 [Sup Ct, NY County 1976] [finding that failure by District Attorney to record the quorum and give instructions on who may vote impaired the integrity of the Grand Jury prejudicing defendant to such an extent that dismissal was mandated].) Given the passionate arguments and actions of this panel at 5:30 p.m. on their previous business day, September 1, 1998, 12 members may well not have been present who heard all of the evidence.
The two “off the record” discussions, on September 1 and 3, concerning accomplice liability — clearly the issue concerning the Grand Jury, given its prior request on September 1 to be recharged thereon and thereafter returning only a true bill on the misdemeanor assault charge — was of such significance in this case that this court finds the failure to record these communications, constituting instructions, however minimal, impaired the integrity of the proceedings and created the risk of prejudice to both defendants. Since Grand Jury proceedings are secret, and normally out of the presence of the impaneling court, the integrity of the record for court review is critical. CPL 190.25 (6) states “[t]he legal advisors of the grand jury are the court and the district attorney * * * [w]here necessary *681 or appropriate, the court or the district attorney * * * must instruct the grand jury concerning the law * * * and such instructions must be recorded in the minutes.” However, the failure to record instructions to the Grand Jury, standing alone, does not mandate a dismissal of the indictment, unless the possibility of prejudice to the defendant is shown. Nevertheless, instructions must be recorded, if complex, and therefore likely to result in prejudice. (People v Percy, 45 AD2d 284 [2d Dept 1974], affd 38 NY2d 806 [1975] [where indictment was dismissed for failure to record instructions].)
Additionally, this court finds the prosecutor was required to recharge the Grand Jury on the legal principles of accomplice liability as well as the specific Penal Law charges under consideration on September 3. CPL 190.25 (6) requires the District Attorney, as legal advisor, to give instructions when necessary or appropriate. It should have been obvious to the prosecutor that it was necessary and appropriate to give additional and different instructions on accomplice liability, since some jurors voted “yes” on it after hearing the prosecutor’s charge twice. Simply informing them that it was a theory of criminal liability was insufficient. Even though there may be no requirement to recharge when the prosecutor’s offer to clarify the law is declined by the Grand Jury, demonstrating a continued understanding of the law already given (People v Augustine, 172 AD2d 843 [2d Dept 1991]), here, no offer to clarify the law of accomplice liability was made, despite the obvious confusion. (See, People v Smith, 159 Misc 2d 77 [Sup Ct, NY County 1993].) Likewise, incomplete and misleading instructions may also impair the integrity. (People v Calbud, Inc., 49 NY2d 389 [1980].) Additionally, the Grand Jury minute book entry for September 3, 1998, listing only one count of attempted murder in the second degree as well as two counts of the incorrect subdivision of assault in the second degree (Penal Law § 120.05 [1]), one count of assault in the third degree (dismissed according to the record made by the prosecutor), and criminal possession of a weapon in the fourth degree, inconsistent with the charges recorded in the minutes and indictment, demonstrates the need for recharging. Therefore, the failure of the prosecutor to recharge impaired the integrity.
Generally, the failure to record communications between the prosecutor and the Grand Jury is not fatal to an indictment, unless the defendant demonstrates the possibility of prejudice from such “off the record” conversations. (People v Collins, 154 *682 AD2d 901 [4th Dept 1989]; People v Cantos, 174 Misc 2d 598 [Sup Ct, Queens County 1997]; People v Erceg, 82 AD2d 947 [3d Dept 1981].) Here, this court finds both defendants may have suffered prejudice as a result of the unrecorded “acting in concert” discussions on September 1 and 3, 1998.
In conclusion, a Grand Jury proceeding is defective, and the resulting indictment subject to dismissal, when “[t]he proceeding otherwise fails to conform to the requirements of article [190] to such degree that the integrity thereof is impaired and prejudice to the defendant may result.” (CPL 210.35 [5].) Considering the original dismissal of the felony charges, the intervening prosecutorial overreaching, and the multitude of irregularities discussed infra, the integrity of this entire Grand Jury proceeding was impaired risking prejudice to both defendants, warranting dismissal of the indictment. Undoubtedly, actual prejudice resulted to defendant Harris, initially indicted only for a misdemeanor assault, and after prosecutorial intervention during unrecorded communications, indicted for four counts of attempted murder in the second degree and other felony charges. By indicting defendant Harris, the less culpable of the two defendants, under the circumstances discussed herein, the prosecutor created the risk of prejudice to defendant Nieves.
Although the court finds no intentional prosecutorial misconduct, “the papers * * * reveal the presence of procedural irregularities going to the very heart and integrity of the Grand Jury system.” (People v Groh, 57 AD2d, supra, at 391.) The prosecutor’s motivation, or lack of bad faith, is irrelevant. (People v Wilkins, 68 NY2d, supra, at 275; People v Montanez, 90 NY2d, supra, at 695.) To sanction the Grand Jury practices employed here “would permit prosecutors in the future to coerce or badger grand jurors to change their solemnly arrived at determinations”. (People v Groh, 57 AD2d, at 393.)
Accordingly, both defendants’ motions to dismiss the indictment are granted. However, the court will grant leave to the District Attorney to apply for an order permitting resubmission of the charges against both defendants to another Grand Jury.

 The pertinent Grand Jury minutes were ordered released exclusively to the parties and were not further disseminated.