OPINION OF THE COURT
Joseph Fisch, J.
Background
Defendant, currently under indictment for two counts of assault in the second degree and related charges, moved this court, inter alla, to inspect the Grand Jury minutes and dismiss the indictment, pursuant to CPL 210.20 and 210.35, on the ground that the Grand Jury proceedings were defective. The People claimed that the Grand Jury minutes submitted to this court for an in camera inspection establish the propriety of the Grand Jury proceedings. This court, unable to ascertain from the Grand Jury minutes submitted exactly what transpired in the Grand Jury, ordered, in its interim decision, an evidentiary hearing be held to determine the facts as to what occurred in the Grand Jury on April 27, 1999 after the prosecutor’s charge, focusing on the content of the apparent off-the-record conversations between the foreperson and prosecutor and whether any votes were actually taken with respect to the charges submitted and additional evidence discussed.
The charges stem out of an incident on January 13, 1999 at the Bronx County Criminal Court where defendant allegedly engaged in assaultive conduct toward a correction officer while being escorted to court. The People presented the case to the Grand Jury over several days starting on April 14, 1999, resulting in the instant indictment voted on April 30, 1999. The defendant testified before the Grand Jury on April 16, 1999.
The Grand Jury minutes reflect that, on April 27, 1999, after a full presentation of the evidence, the prosecutor legally charged the Grand Jury on two counts of assault in the second degree, and one count each of assault in the third degree and *865 obstructing governmental administration in the second degree. After the charge on April 27, 1999, the minutes reflect the following colloquy:
“mr. heller: Okay, for the record, I am Assistant District Attorney James Keller. This is a continuation of the case of the People of the State of New York versus Dushon Foster, docket number 99X016252. What I understand from the foreperson is that the Grand Jury does not have the necessary number of votes to either dismiss the charges or to vote a true bill at this time; is that correct?
“the foreperson: That’s correct.
“mr. heller: I also understand from the foreperson that additional evidence will help the Grand Jury with their deliberations; is that correct, Mr. Foreperson?
“the foreperson: That’s correct.
“mr. heller: I understand that the Grand Jury would like to hear from the inmate whom Dushon Foster said was in the adjacent cell at the time.
“foreperson: Correct again.
“mr. heller: And that the Grand Jury would like the medical records of both Dushon Foster and Corrections Officer Barry Pankey. Just for the record, I am going to do all that I can in order to get those documents and this inmate to go before Grand Jury to testify, keeping in mind, however, that the availability of the inmate is still undetermined. Okay. Okay. At this time — withdrawn. Thank you.”
Findings of Fact
On October 12, 1999, a fact-finding hearing was held. The People called one witness, the foreperson of the instant Grand Jury panel, whose testimony the court substantially credits, despite some confusion and difficulty in recall. The People did not call the prosecutor who had presented the case to the Grand Jury.
After the presentation of the evidence and the prosecutor’s charge on April 27, 1999, the Grand Jury was not satisfied with the evidence, finding it to be “insufficient.” After discussion and arguments, the foreperson took at least one vote, possibly two, on the charges submitted and could not get 12 votes to true bill the charges. He also could not get 12 votes to dismiss the charges. The Grand Jury felt there was insufficient evidence to true bill the charges, and some members demanded that the prosecutor present additional evidence. The foreper *866 son could not recall whether a vote was taken to hear additional evidence, but recalled that more than 12 members demanded additional evidence. The additional evidence requested by the foreperson from the prosecutor consisted of an inmate eyewitness as well as medical evidence regarding alleged injuries sustained by the correction officer and defendant.
After failing to vote a true bill, the foreperson had a conversation with the prosecutor near the door, outside the hearing of the other grand jurors, and advised him of the votes that had taken place and discussed additional evidence. This conversation was not recorded. The prosecutor sometime thereafter recorded the colloquy noted supra. Notably, the foreperson testified that he always went to the door by himself to tell the presenting prosecutor what had transpired in the Grand Jury, apparently off the record.* Indeed, a similar unrecorded conversation had taken place earlier in the presentation of this case, to wit, immediately after the defendant testified on April 16, 1999, pertaining to a Grand Jury vote to request the testimony of the correction officer’s superior.
On April 30, 1999, the prosecutor presented medical evidence pertaining to the defendant and the correction officer, and immediately thereafter recharged the Grand Jury on the charges previously submitted but not true billed. The Grand Jury only then true billed all submitted charges, notwithstanding the nonproduction of the inmate eyewitness previously requested but apparently no longer necessary.
The prosecutor did not seek judicial leave to resubmit the charges to the Grand Jury after its initial refusal to true bill the charges on April 27, 1999.
Conclusions of Law
A Grand Jury proceeding is defective, and the resulting indictment subject to dismissal pursuant to CPL 210.20 (1) (c), when “[t]he proceeding otherwise fails to conform to the requirements of article [190] to such degree that the integrity thereof is impaired and prejudice to the defendant may result.” (CPL 210.35 [5].)
*867 At issue is whether the Grand Jury, after presentation of the evidence and legal instructions on April 27, 1999, dismissed the submitted charges by failing to true bill them.
CPL 190.75 (1) provides: “If upon a charge that a designated person committed a crime, either (a) the evidence before the grand jury is not legally sufficient to establish that such person committed such crime or any other offense, or (b) the grand jury is not satisfied that there is reasonable cause to believe that such person committed such crime or any other offense, it must dismiss the charge.” Hence, the Grand Jury’s failure to vote a true bill after its consideration of submitted charges and its determination that the evidence presented was “insufficient” constitutes a “no true bill,” tantamount to a dismissal, requiring leave of the court for resubmission pursuant to CPL 190.75 (3). (People v Harris, 181 Misc 2d 670 [Sup Ct, Bronx County 1999], supra; People v Davis, 114 Misc 2d 645 [Sup Ct, Kings County 1982]; People v Wesley, 161 Misc 2d 786 [Sup Ct, Kings County 1994].) In effect, the failure of 12 members of the Grand Jury to vote a true bill is the same as a vote to dismiss. This outcome is logical, reasonable and fair, because when a Grand Jury deliberates and fails to return a true bill on submitted charges, that body is indicating that the evidence is either legally insufficient or the wrong person is charged. (People v Davis, 114 Misc 2d, at 647; People v Harris, 181 Misc 2d 670.) Such failure to return a true bill is deemed a dismissal where there has been a hearing by competent authority, an examination of the evidence, and a conclusion reached which would not warrant submission of the question to a trial jury. (People v Harris, supra; People v Davis, supra, at 647.) Of course, to constitute a dismissal, some definite action must have been taken by a Grand Jury. (Supra, at 647.) As conceded by the People, the comprehensive statutory scheme regulating Grand Jury proceedings does not contemplate the termination of deliberations without some action by the Grand Jury. The Grand Jury must exercise one of the options provided in CPL 190.60; it cannot fail to act. Here, the Grand Jury took action by 12 members nonvoting a true bill, the equivalent to a “no true bill.”
Based upon the foreperson’s testimony which is supported by the Grand Jury minutes, after full discussion and due consideration, the Grand Jury took one vote, possibly two, which failed to muster the necessary 12 votes to true bill the charges. Additionally, at that time, the Grand Jury was not satisfied with the evidence and considered it “insufficient.” Notwithstanding *868 the lack of the Grand. Jury to affirmatively vote to dismiss the charges, the vote of “no true bill” constitutes its action, equivalent to a dismissal, and requires leave of the court to resubmit the charges. (People v Harris, supra.)
Pursuant to CPL 190.75 (3), “[w]hen a charge has been so dismissed, it may not again be submitted to a grand jury unless the court in its discretion authorizes or directs the people to resubmit such charge to the same or another grand jury.” The Legislature enacted CPL 190.75 (3) in order to check the prosecutor’s domination of the Grand Jury process by requiring court approval for submission after a Grand Jury initially refuses to indict. (People v Wilkins, 68 NY2d 269, 273 [1986]; People v Cade, 74 NY2d 410 [1989]; People v Wesley, 161 Misc 2d, supra, at 791; People v Harris, supra.) Here, leave of the court was not sought, and thus, resubmission of the charges, without such judicial leave or a sua sponte request, impaired the integrity of the Grand Jury and created the risk of prejudice to the defendant.
There is no evidence in the record that the prosecutor legally informed the Grand Jury that their failure to true bill the charges was the equivalent of a dismissal. This failure to so inform the Grand Jury was prejudicial to the defendant, in that the Grand Jury, after rejecting the People’s case by refusing to indict because of insufficient evidence, and thus having concluded, as a matter of law, its proceeding in this case, continued to hear additional evidence and subsequently returned an indictment.
However, assuming arguendo such instruction was not required, there is no evidence that a vote was requested or taken on April 27th or 30th as to whether the Grand Jury, as a body, wished to reconsider its initial vote of no true bill or to continue deliberations. The foreperson cannot adjourn deliberations when 12 members have failed to concur on any particular charges submitted (People v Harris, 181 Misc 2d 670 [Sup Ct, Bronx County 1999], supra) because CPL 190.25 (1) requires 16 members be present for a quorum, and the finding of an indictment and “every other affirmative official action or decision requires the concurrence of at least twelve members thereof.” Thus, once the prosecutor has completed the presentation of its evidence, has given all legal instructions, and the Grand Jury has returned a vote of “no true bill,” the Grand Jury must have the concurrence of at least 12 members during a vote to determine whether they wish to reconsider their initial vote and continue deliberations or request additional ev *869 idence be presented. (People v Harris, supra; People v Davis, 114 Misc 2d 645 [Sup Ct, Kings County 1982], supra; People v Groh, 57 AD2d 389 [2d Dept 1977] [where three members voting to be recharged on the law was insufficient as a request by the Grand Jury to receive additional instructions]; People v Smith, 159 Misc 2d 77 [Sup Ct, NY County 1993] [where the Grand Jury voted sua sponte to reconsider its initial vote of no true bill].)
Additionally, a Grand Jury may not, without judicial permission pursuant to CPL 190.75 (3), reconsider its vote of no true bill, which has not been filed, under circumstances which incontrovertibly indicate prosecutorial involvement in the Grand Jury deliberative process. (People v Montanez, 90 NY2d 690 [1997]; People v Groh, 57 AD2d 389 [2d Dept 1977], supra; People v Smith, 159 Misc 2d 77 [Sup Ct, NY County 1993], supra.) However, a Grand Jury may reconsider such dismissal so long as it is truly sua sponte, i.e., when the prosecutor does not unilaterally intervene in the proceedings in a manner which causes or contributes to their decision to reconsider their action. (People v Montanez, supra; People v Neal, 231 AD2d 470 [1st Dept 1996], lv denied 89 NY2d 927 [1996].) The Court of Appeals, in Montanez, held there was prosecutorial overreaching impairing the integrity of the proceedings to the defendant’s prejudice, where the prosecutor shook his head in the Grand Jury chamber upon reading their vote sheet, indicating a dismissal of all felony charges. Here, no vote sheet was utilized, but, instead, the foreperson, in an unrecorded conversation, informed the prosecutor at the door of the results of their vote. As a result of the nature of this conversation, this court need not reach the issue as to whether the Grand Jury sua sponte reconsidered its initial vote of no true bill and requested additional evidence be presented.
At issue is whether the unrecorded conversation between the foreperson and prosecutor pertaining to the Grand Jury’s failure to true bill the submitted charges impaired the integrity of the process and created the risk of prejudice.
Generally, the failure to record communications between the prosecutor and the Grand Jury, pursuant to CPL 190.25 (6)’s requirement to record instructions, is not fatal to an indictment, unless the defendant demonstrates such unrecorded conversations impaired the integrity of the process and created the possibility of prejudice to the defendant. (People v Erceg, 82 AD2d 947 [3d Dept 1981]; People v Collins, 154 AD2d 901 [4th Dept 1989], lv denied 75 NY2d 769 [1989]; People v Percy, 45 *870 AD2d 284 [2d Dept 1974], affd 38 NY2d 806 [1975]; People v Harris, 181 Misc 2d 670 [Sup Ct, Bronx County 1999], supra; People v Cantos, 174 Misc 2d 598 [Sup Ct, Queens County 1997].) Here, the acknowledged off-the-record conversations pertained to the failure of the Grand Jury to vote a true bill on the charges submitted, as well as additional evidence which would be helpful. During the course of this presentation, unrecorded communications between the foreperson and prosecutor occurred pertaining to the following evidence: (1) the testimony of the correction officer’s superior; (2) medical evidence regarding the defendant’s alleged injuries; (3) medical evidence regarding the correction officer’s alleged injuries; and (4) the testimony of an inmate with whom the defendant was conversing at the time, and who was an apparent eyewitness to said incident. These were not mere casual conversations of inconsequential or collateral nature, but rather struck at the very heart and substance of the presentation of the People’s case.
This court holds that such off-the-record communications between the foreperson and the prosecutor, in conjunction with the fact that the Grand Jury, on April 27, 1999, was not satisfied with the evidence which it found insufficient, impaired the integrity of the process and created the possibility of prejudice to the defendant.
Since Grand Jury proceedings are secret, and normally out of the presence of the empaneling court, the integrity of the record for court review is critical. (People v Harris, 181 Misc 2d 670 [Sup Ct, Bronx County 1999], supra.) The practice of routinely engaging in off-the-record conversations pertaining to Grand Jury action serves to thwart defendants’ rights to have the courts examine the Grand Jury record to determine the sufficiency and propriety of the presentation. The court should be able to decide defendants’ routine motions to inspect and dismiss based upon the Grand Jury minutes, without the necessity of holding hearings to reconstruct a record.
Accordingly, the defendant’s motion to dismiss the indictment is granted, pursuant to CPL 210.20 (1) (c). Leave to resubmit the charges to a new Grand Jury is granted, pursuant to CPL 210.20 (4).

 This court, in People v Harris (181 Misc 2d 670 [Sup Ct, Bronx County 1999]), filed in March, urged discontinuance of “off-the-record” conversations during Grand Jury proceedings, cautioning that such unrecorded discourse may threaten the integrity of Grand Jury presentations. It is troubling to find, so shortly after Harris, yet further evidence of this practice.